Kurtz v. Carr, Administrator.

Filed March 12, 1886.

---

No. 12,267.

KURTZ v. CARR, ADMINISTRATOR.

FORMER ADJUDICATION.—*Conclusiveness of Judgment.*—A judgment is conclusive as to all matters which were or might have been litigated in the action, and a bar to any further litigation upon the same cause of action, between the same parties or those claiming under them.

SPECIAL FINDING.—*Exception to Conclusion of Law Admits Correctness of Facts.* —By excepting merely to the conclusions of law upon a special finding of facts a party admits that the facts have been correctly found.

From the Carroll Circuit Court.

*W. F. Hays,* for appellant.

*A. W. Reynolds* and *E. B. Sellers,* for appellee.

HOWK, J.—This was a verified claim filed by the appellant, Kurtz, in the clerk's office of the White Circuit Court, against the appellee Carr, administrator *de bonis non* of the

estate of Benjamin D. Pettit, deceased. Afterwards, such claim not having been allowed by the appellee at the time prescribed by law, it was duly transferred to the issue docket of the White Circuit Court for trial; and thereupon, on appellant's application, the venue of the cause was changed to the court below. There, the parties appeared, and appellant filed a second paragraph of his verified claim. The cause being at issue was tried by the court, and, at the request of the parties, the court made a special finding of facts, and thereon stated its conclusions of law in favor of the appellee, the defendant below. Over appellant's exceptions to the conclusions of law, the court rendered judgment against him for appellee's costs.

In this court, several errors have been assigned by the appellant upon the record of this cause; but, in the outset of his brief, his counsel says: " The appellant rests his appeal upon his exceptions to the finding of facts, and the conclusions of law as found by the court." We shall consider this case, therefore, as it is presented by the special finding of facts, and decide the question whether or not the trial court erred in its conclusions of law. The facts found by the court were substantially as follows:

It is found that, on the 13th day of September, 1876, one Cormacan Hays conveyed to said Benjamin D. Pettit, then in life, by warranty deed, for the expressed consideration of $25,890, certain lands in White county, Indiana, containing five hundred and eleven and one-half acres, which deed was dated August 1st, 1876, but was not delivered until September 13th, 1876; that, on the day last named, Benjamin D. Pettit executed to Cormacan Hays his written promise as follows:

"BROOKSTON, Sept. 13th, 1876.

" I hereby assume and agree to pay the sum of twenty-one thousand and eighty-one dollars, as follows, to wit: The sum of fourteen thousand dollars to the heirs of John Richey, deceased; thirty-seven hundred and seventy-five dollars to the Second National Bank of Lafayette, Indiana; fifteen

hundred and six dollars to the Lafayette Savings Bank; and eighteen hundred dollars to .George Chamberlain. Should Cormacan Hays pay me the above amounts, with the interest thereon at the rate of ten per cent. per annum, within three years from this date, or cause the same to be paid, then I bind myself, my heirs and administrators, to make the said Cormacan Hays a good and sufficient deed to a certain tract of real estate contained in a deed of said Hays to Benjamin D. Pettit, dated August 1st, 1876.

"(Signed)     . B. D. PETTIT."

In July, 1883, Cormacan Hays assigned this writing obligatory to the appellant, by endorsement thereon in these words: "Lafayette, Ind.—I hereby assign the within contract to Charles Kurtz.        (Signed)        C. HAYS."

It is found that, on the 13th day of September, 1876, Cormacan Hays was indebted to the Lafayette Savings Bank in the sum of $4,300, with interest thereon from October 29th, 1875. This indebtedness was evidenced by a promissory note, dated October 29th, 1875, executed to such savings bank by Hays, as principal, and Charles Kurtz, Benjamin D. Pettit, Joseph H. Krom and Samuel H. Powell, as sureties. Powell was then insolvent, and suit had been instituted on such note. On the 26th day of November, 1876, Kurtz, Pettit and Krom paid the interest due on such note and costs accrued in the pending suit, and each in payment of such note executed his separate note to the savings bank for the sum of $1,433. These notes became due six months after November 26th, 1876, and Kurtz, Krom and Pettit each paid his note when due. And it is found that the sum of $1,506, which Pettit assumed and agreed to pay to such savings bank, embraces and constitutes the one-third of such note of $4,-300, together with one-third of the interest due thereon and one-third of such costs, and that Pettit fully paid the sum which he thus assumed to pay to such savings bank. It is further found that, at the time of the execution of the aforesaid agreement, Hays was indebted to George Chamberlain

in the sum of $1,800, with interest, evidenced by a joint promissory note executed by Hays, as principal, and Pettit as surety. On the 14th day of February, 1877, Chamberlain commenced an action upon such note, in the White Circuit Court, against Hays and Pettit. On the 27th day of February, 1877, Pettit conveyed to Chamberlain forty acres of land at the agreed price of $1,000, for which Chamberlain agreed to release Pettit from any further liability on such note, and, on the next day, dismissed his action as to Pettit, and, Hays not appearing, judgment by default was rendered against him for $2,058.87 and costs of suit. This judgment was rendered pursuant to the agreement between Pettit and Chamberlain, and it was further agreed between them that if Chamberlain should succeed in collecting his judgment against Hays, he would repay to Pettit the sum of $1,000, the agreed price of such land.

It is found that Hays was ignorant of the agreement between Pettit and Chamberlain, at the time it was made and at the time such judgment was rendered, and the evidence does not disclose the time when Hays first acquired knowledge of such agreement and of such payment of $1,000. This judgment against Hays is still in force and remains unpaid. Chamberlain assigned the judgment to the plaintiff, Kurtz, in August, 1883, receiving therefor $300. At the time this agreement was made between Pettit and Chamberlain, the latter was ignorant of the agreement between Hays and Pettit, whereby Pettit had agreed to pay such indebtedness.

It is further found that, on the 27th day of October, 1882, Hays filed his claim in the White Circuit Court against John P. Carr, administrator of the estate of Benjamin D. Pettit, deceased. His claim or complaint was in three paragraphs.

In the first paragraph Hays stated that, on September 13th, 1876, he conveyed by warranty deed to Benjamin D. Pettit the following described lands, to wit (description), containing 511½ acres, of the value of $30,000, the consideration ex-

pressed in such deed being, however, but $25,890. Benjamin
D. Pettit, on the day last named, in consideration of the exe-
cution of such deed, agreed with Hays to pay the sum of $21,-
081 in the aggregate to certain individuals and banking cor-
porations, and relieve Hays from all liability upon the same;
that, in addition to the payment of such sum of money, Pettit
agreed to insure to Hays the undisturbed and quiet possession
of such lands, for at least three years from September 13th,
1876, and that he would supply Hays with 600 yearling steers,
to be grazed and matured upon such lands and other lands
then under Hays' control; and that, at the end of such three
years, Pettit was to reconvey to Hays upon the payment of
such sum of $21,081, with interest; but that Pettit violated
the terms and conditions, upon which such conveyance was
made, in all their essential features; that, instead of paying
off the sum of money he agreed and covenanted with Hays
to pay off, he suffered judgment to be taken against Hays,
and execution to issue for the possession of such lands, soon
after the making of such deed, and a long time prior to the
time when Hays was to yield possession, and that Pettit be-
came an active participant in such suit for possession, by aid-
ing Alice J. Elliott and Keltie McCoy, the heirs of John
Richey, who were the holders of a mortgage upon such lands
for the sum of $14,000, which sum was one of the several
sums assumed by Pettit to pay immediately upon the execu-
tion of such deed, and which indebtedness Pettit did not pay,
but fraudulently sought to obtain title to such lands, and
avoid the covenants under which he obtained his deed from
Hays and wife, by procuring and permitting the sale of such
lands, under a decree of foreclosure by said Elliott and Mc-
Coy, at the same time contracting and colluding with them
and one Wilstach to put him, Pettit, in possession, and thereby
evade the terms and conditions under which he took title to
such lands from Hays; that, in consequence of such fraudu-
lent collusion, Hays had been dispossessed of such land, and
Pettit's representative then held possession; that no money or

other consideration had been paid to Hays for such lands; that there was due to Hays, as damages, for breach of Pettit's contract, the sum of $25,000, and for unpaid purchase-money for such lands the sum of $25,890, with interest. Wherefore Hays demanded judgment for $50,890.

In the second paragraph of his complaint Hays averred that he had conveyed such 511½ acres of land to Pettit, and in part consideration therefor Pettit executed such agreement, dated September 13th, 1876, assuming and agreeing to pay such several sums of money, amounting to $21,081, a copy of such agreement being filed with and made part of such second paragraph; that such sum of $14,000, mentioned as due to the heirs of John Richey, had been theretofore secured by a mortgage on such lands, which had been foreclosed prior to such conveyance; and that the residue of such sum of $21,081 consisted of debts of Hays, evidenced by promissory notes executed by him with Pettit as his surety; that as an additional consideration for the conveyance of such lands, Hays was to retain the possession and enjoy the use thereof for three years from the time of the conveyance, and Pettit was to furnish him 600 head of yearling cattle, to be fed and grazed on such lands, and other contiguous lands, which would have yielded Hays a large profit. Hays charged that Pettit, in his lifetime, did not pay, and, since his death, his administrator had not paid, such sum of $14,000, or any part thereof, to the heirs of John Richey, as stipulated in such written agreement of September 13th, 1876; but, on the contrary, Pettit, while yet living, suffered the lands conveyed to him by Hays to be sold on the decree foreclosing the mortgage thereon, given to secure the Richey debt, and suffered John A. Wilstach to purchase such lands and receive a sheriff's deed therefor under such foreclosure and sale, and actually participated in the proceeding whereby the title to such lands was so conveyed to Wilstach; that such sale occurred less than six months after Pettit's acceptance of such deed and his execution of such written agreement, and, by Pettit's procure-

ment and within such three years, Wilstach recovered possession of all such lands, by virtue of his title obtained through such sheriff's sale; whereby Hays was wholly deprived of the possession and enjoyment of all such lands for the entire term of three years, to his damage $30,000.

And the claimant Hays charged that the decedent, Pettit, did not in his lifetime pay, nor had his administrator, nor had any one for him or them, paid the sum of $3,775 to the Second National Bank of Lafayette, Indiana, but the same remained a subsisting liability against the claimant, to his further damage $6,000; that, in violation of such written agreement, Pettit in his lifetime, and, since his death, his administrator had failed to pay to the Lafayette Savings Bank such sum of $1,506, which, by such agreement, Pettit assumed to pay, and the same remained a subsisting liability against Hays, to his further damage $3,000; that Pettit in his lifetime did not pay, and, since his death, his administrator had not paid, to George Chamberlain the sum of $1,800, as by his written agreement Pettit assumed and agreed to pay, nor any part thereof, but the same remained a subsisting liability against Hays, to his further damage $4,000.

It was further charged in such second paragraph that Pettit did not furnish the cattle, to the damage of Hays $30,000; and judgment was demanded for $103,000.

In his third paragraph Hays alleged that he sold and conveyed such 511½ acres of land to Pettit, and in part consideration therefor Pettit executed to Hays such written agreement, assuming and agreeing to pay such several sums, amounting to $21,081, a copy of which agreement was filed with and made part of such third paragraph; that the sum, which Pettit agreed to pay the heirs of John Richey, was secured by a mortgage on such lands, and the remainder of such $21,081 comprised debts of Hays, evidenced by promissory notes executed by him with Pettit as his surety; that at the time of such conveyance Hays was occupying such lands for grazing cattle and raising crops; that Hays was ex-

perienced in this business, but was without means with which to stock his farm, which was well known to Pettit; that such lands were of the value of $30,000, while the consideration expressed in the deed was only $25,890; and that to induce Hays, with his wife, to execute such conveyance, and to accept from Pettit such written agreement, and as a further consideration for such deed by Hays and his wife, and as an inducement to Hays to execute such deed and accept such written agreement, Pettit verbally contracted and agreed with Hays that the latter should continue to occupy, and have the use and enjoyment of, all such lands so conveyed for the full term of three years next ensuing the 13th day of September, 1876, and that, within a reasonable time thereafter, he, Pettit, would furnish to Hays 500 yearling steers to be kept by Hays three years on the lands so conveyed, and on other lands controlled by Hays; that as fast as the cattle were furnished Hays should mortgage them to secure the repayment of the money expended by Pettit in their purchase, with interest at the rate of ten per cent. per annum; and that whatever should be realized upon the sale of such cattle, when matured and sold, over the amount of their purchase-money and such interest, should be the money of Hays as compensation for his care and management of such farm, and his skill and outlay in the tillage thereof, and in the management of the business incident to the maturing of such cattle; and Hays said that such verbal contract or agreement was the only consideration for the execution by him and his wife of such deed to Pettit, and of the acceptance from Pettit of his written agreement, whereby he assumed to pay for Hays the aggregate sum of $21,081.

It was further alleged that Pettit failed, neglected and refused to furnish cattle, and thereby Hays sustained damages. It was further alleged that among the debts so assumed by Petit, the one described as " fourteen thousand dollars to the heirs of John Richey," was secured to John Richey in his lifetime by a mortgage on the identical lands so conveyed to

Pettit; and that, prior to such conveyance, Alice J. Elliott and Keltie McCoy, daughters of John Richey, had become the owners of the mortgage and had obtained a judgment for the debt secured thereby, and a decree for its foreclosure and for the sale of such lands; that notwithstanding Pettit's agreement to pay this debt, he suffered such lands to be sold under such decree within less than six months after such lands had been conveyed to him, Pettit procuring John A. Wilstach to purchase such lands in trust for the above named daughters of John Richey; that Pettit also caused Wilstach to institute suit against Hays, and to dispossess him; and that, in such suit, Hays was put to great expense in the payment of costs and attorney's fees. Wherefore Hays demanded judgment for $45,000.

The court further found that thereupon, at the same term, 1883, of the White Circuit Court, the defendant filed in such court his written motion to strike out of the second paragraph of such complaint all that part thereof which is enclosed in brackets, "unless (in the language of the motion) the plaintiff makes parties to this action Alice J. Elliott and Keltie McCoy, heirs of John Richey, the Second National Bank of Lafayette, Indiana, the Lafayette Savings Bank, and George Chamberlain," and upon such motion the record reads: "Which motion the court sustains, and the plaintiff excepts to the ruling of the court." No further action was had by such court on that motion, and the persons named were not made parties to the action. And thereupon such further proceedings were had that the defendant filed his answer, in one paragraph, denying each and every allegation in the complaint; and the issues being joined, the cause was submitted to the court for trial. And, on the 6th day of July, 1883, the court having heard the evidence, and the argument of counsel, found for the plaintiff, Hays, and assessed his damages in the sum of $1,600; and afterwards, at the same term of the White Circuit Court, to wit, on September 3d, 1883, the court rendered judgment on such

finding, in favor of Hays and against Pettit's estate, for the amount of damages assessed and costs of suit, which judgment was in full force and unpaid.

The court further found that the contract for the sale and conveyance of such five hundred and eleven and one-half acres of land, and the written promise of Pettit to pay such several sums of money, which were mentioned in the complaint of Hays, in his suit in the White Circuit Court, were the identical contract and promise stated in the appellant's complaint in this action.

Upon the facts so found, the trial court stated its conclusions of law as follows:

"1. That the plaintiff is not entitled to recover for the alleged failure and refusal of Pettit to pay such sum of $1,506 to the Lafayette Savings Bank.

"2. That Hays sustained damages by reason of Pettit's failure to pay to George Chamberlain such sum of $1,800, in the amount of $2,652, which includes interest on such sum of $1,800 to this date.

"3. But that such judgment of the White Circuit Court concludes the rights of the parties to this action, and is a bar to this action against the defendant.

"4. I therefore find for the defendant."

Appellant has not questioned, in this court at least, the special finding of facts. It is settled by our decisions that, by his exceptions to the conclusions of law, appellant has admitted that the facts of his case were fully and correctly found by the trial court, but claims that the court's conclusions of law, upon the facts so found, were and are erroneous. *Cruzan* v. *Smith*, 41 Ind. 288; *Robinson* v. *Snyder*, 74 Ind. 110; *Fairbanks* v. *Meyers*, 98 Ind. 92; *Helms* v. *Wagner*, 102 Ind. 385.

We are of opinion, however, that upon the facts specially found, the court did not err in its conclusions of law. It is clear from those facts that all the matters in issue, in the case in hand, might have been, and ought to have been litigated,

tried and determined by the White Circuit Court, in the prior suit there pending, upon the same written agreement, of *Hays* v. *Carr, Admr, etc.*, whereof mention is made in the special finding of facts herein. In such a case, it has been uniformly held by this court from its organization, that the prior adjudication is a complete bar to any further litigation upon the same cause of action, by and between the same parties, or those claiming under them by assignment or otherwise. *Fischli* v. *Fischli*, 1 Blackf. 360; *Richardson* v. *Jones*, 58 Ind. 240; *Elwood* v. *Beymer*, 100 Ind. 504.

We have found no error in the record of this cause.

The judgment is affirmed, with costs.

Filed March 11, 1886.