Evansville and Terre Haute Railroad Co. *v.* Tohill, Admx., etc. ·

Filed December 13, 1895.

No. 17,208.

## EVANSVILLE AND TERRE HAUTE RAILROAD CO. *v.* TOHILL, ADMX., ETC.

| 143 | 49 |
| 146 | 218 |
| 146 | 573 |
| 143 | 49 |
| 149 | 262 |
| 151 | 309 |
| 151 | 312 |
| 143 | 49 |
| 170 | 15 |
| 170 | 376 |

RAILROAD.—*Personal Injury of Employe by Negligence of Fellow-Servant.—Recovery.—Rules and Regulations.*—Recovery cannot be had for injuries to railroad employes from the failure of other employes to observe the rules for operation of trains, adopted and promulgated by the company. (See note at end of opinion.)

SAME.—*Train Dispatcher, Incompetency.—Special Finding.—Rules and Regulations.*—Findings of the jury that a train dispatcher had issued forty orders for trains to run ahead of schedule time and to depart from stations before schedule time, and that his office was in the same building as that of the president of the road, are evidentiary merely, and not the equivalent of a finding of the ultimate fact as to the competency of such dispatcher, especially where the rules of the company permitted him to make such orders.

SAME.—*Rules and Regulations.— Promulgation.— Extra Trains.—*

VOL. 143—4

The adoption and promulgation by a railroad company of rules permitting regular trains to be converted into extra trains running without a schedule, and requiring trains of the latter class to take a side-track at least five minutes before the arrival of any scheduled train at the last station to which it is safe for the extra train to run, exonerates the company from liability for the death of an engineer of a schedule train from a collision between it and such an extra train running ahead of its ordinary schedule, due to the non-observance of the rule as to side-tracking by his co-servants in charge of such train.

SAME.—*Personal Injury.—Negligence of Fellow-Servant. —Special Train.*—A railroad company is not liable for the death of an engineer caused directly by the negligence of a fellow-servant in failing to observe the general rules of the company in connection with a special order and in running past a station instead of waiting on a side-track for such engineer's train.

SPECIAL FINDING.—*Question Not in Issue.*—A special finding of a jury upon a question not in issue will be disregarded.

PRESUMPTION.—*Appeal.—Special Verdict.*—Presumptions will not be indulged in on appeal for the sake of supporting a special verdict.

From the Sullivan Circuit Court.

*Iglehart & Taylor*, for appellant.

*Cullop & Kessinger, Townsend & Wilhelm, J. S. Bays* and *A. D. Leach*, for appellee.

HACKNEY, J.—This was an action in three paragraphs of complaint by the appellee, to recover damages from the appellant, for the alleged negligent killing of Edward D. Tohill, an engineer of appellant, in a collision of two freight trains upon appellant's railway. Each paragraph of complaint alleged that the decedent was the engineer of train No. 20, north bound from Evansville to Terre Haute, and running on the regularly established schedule time for said train; that train No. 19, running south on said railway, was, by direction of the appellant, running one hour and twenty minutes ahead of the schedule time for said train, and that while said two trains were

so running, each at the speed of twenty-five miles per hour, and at a point where the track was so obscured by natural objects that a view could not be had in either direction for any considerable distance, said trains collided, and without any fault of said engineer, Tohill, he was killed. The first paragraph charged the appellant to have been negligent in running No. 19 ahead of schedule time and passing a station where, by the schedule, said two trains should have met, and also in failing to notify engineer Tohill of the running of No. 19 out of schedule time. The second paragraph pleads certain rules of the appellant as to the movements and the operating of trains, in leaving and arriving at stations, as to the preference between trains in taking the right of way, and the duties of trains to go upon sidings and clear the main track in time for the arrival of schedule trains, having such preference, at the meeting points established by the schedule. It is alleged that the train dispatcher had control of the movement of all trains and of all employes on such trains; that he directed the movements of the two trains in question, and that in violation of said rules he negligently ordered train No. 19 to run in advance of schedule time to Princeton, beyond Vincennes, the schedule meeting place for said two trains; that when he gave said order he knew, or could by diligence have known, that the obedience of such order would cause said train No. 19 to meet said train No. 20 between Vincennes and Princeton; that Tohill had no notice or knowledge of said order. It is also averred that appellant was negligent in "employing and keeping in its employ, in the office of train dispatcher, said Southern, whom the defendant well knew, or could have known, was incompetent and unfit, on account of his negligence and careless manner of running its trains ahead of their schedule

time in violation of defendant's rules, to fill said position; that it was known by the defendant that said train dispatcher had been for three months last past, before said date, violating the said rules * * in carelessly and negligently running its trains ahead of their schedule time." It was also alleged that the appellant was negligent in running train No. 19 ahead of time without notice to Tohill, as in the first paragraph. The third paragraph is identical with the second, except that it alleges the effect of the appellant's rules, which were set out at full length in the second.

Demurrers to the several paragraphs of complaint were overruled, the appellant answered in general denial, the cause was submitted to a jury, and the trial resulted in a special verdict, upon which the circuit court gave judgment for the appellee over the motion of the appellant for judgment in its favor.

In addition to facts concerning the appellant's corporate existence, the line of its railway, the employment of Tohill, the collision and its results substantially as alleged in the complaint, the special verdict found that by time-table the company classified its trains, as *regular* and *extra*, gave all schedule trains numbers, specified all of the stations, the stopping and meeting points of such trains, and the times of their arrival at and departure from stations, and that no train should arrive at or leave a station in advance of its schedule time, if shown; that by rule it was made the duty of all train operatives to run all *regular* trains according to such schedule time, and it was provided that no person, except by order of the company, should change or modify such rule; that the company had in its employ as train dispatcher one Southern, who had full control of the movement of all trains and of the employes operating such trains, with power to direct when and

how all trains should run, to change the running of *regular* trains to that of *extra* trains, and to fully represent the company in that department; that No. 20 was running north on regular time and as a *regular* train; that No. 19, running south, ran to Sullivan as a *regular* train, and when at said station it was ordered by said train dispatcher to run in advance of time to Princeton; that, pursuant to said order, it left Sullivan ahead of regular schedule time, and thereby became, under said classification of trains, an *extra* between Sullivan and Princeton. It is found that No. 19 arrived at Vincennes, the place which, if running as a *regular* train, it should have met No. 20, one hour and fifteen minutes later; that it left Vincennes one hour and twenty minutes ahead of schedule time, and continued its trip to a point eight miles south of that station. It is stated in the tenth finding that the appellant knew, when the order in question was given, that Nos. 19 and 20 must meet between Vincennes and Princeton; that it failed to direct, by said order, where said trains should meet, and wholly failed to give notice to No. 20 that No. 19 was running ahead of time; that said order, without such notice or a direction as to where said trains should meet, was dangerous to operatives. It is, by other findings, stated that the company had a rule that trains of inferior class should take the siding and clear the main track for trains of superior class five minutes, and that no train should leave the station except to meet or pass, at the next station, the train having the right of track, unless it had the full time allowed between stations to make the meeting at the passing point and clear the track for such other trains. By finding numbered twelve, the jury returned that the operatives of No. 19 acted upon said special order to run ahead of time, and disregarded and wholly failed and

neglected to observe and act in accordance with said rules as to the operation of said train between Vincennes and Princeton; that between Vincennes and Hazleton, on appellant's road, was a station called Pursell, where there was a side track of sufficient capacity to admit No. 19, and permit No. 20 to pass in safety, but that said operatives wholly failed to accept said opportunity, and continued to a point beyond Pursell, where the collision occurred. It is also found that the train dispatcher could have ascertained that such meeting place was available, but neglected to do so.

By the fifteenth finding, the jury stated that Southern had been the appellant's train dispatcher for one year, having full charge of the running of all trains; that during that time he issued forty orders for schedule trains to run to and depart from stations ahead of their schedule time, "which said trains, under the rules of the company, were not permitted to arrive, or leave stations ahead of their scheduled time, except when ordered to do so by the" said train dispatcher, and that the office of the train dispatcher and that of the president of the company were in one and the same building.

The evidence disclosed, without conflict, as existing rules of the company, the following, not returned by particular finding by the jury: "All extra trains are of inferior class to all regular trains of whatever class." "A train receiving order to run extra * * must keep clear of all regular trains as required by rule." "A train or any section of any train must be governed strictly by the terms of orders addressed to it, and must not assume rights not conferred by such orders. In all other respects it must be governed by the train rules and time table." These rules are urged, in connection with those specially found, in support of the motion for a new trial, and as showing that the verdict was con-

trary to the evidence. The questions presented by assign-
ments of error, and the argument of counsel involve the
sufficiency of the several paragraphs of complaint; the
sufficiency of the facts found in the special verdict to
sustain the judgment against the appellant, and whether
the special verdict was not contrary to the evidence.

. If the rules proven and not specially stated in the ver-
dict had been found by the verdict, we would not find it
difficult to determine that the negligence resulting in
the death of engineer Tohill was that of those in charge of
train No. 19, and not that of the train dispatcher. It
would then very clearly appear that the appellant had,
by its general rules, directed No. 20 to run upon a given
schedule of time; that it reserved the right to make
of No. 19 an extra train, as was done; that extra trains
were required to clear the track for schedule or regular
trains; that the order to No. 19 should have been con-
strued by the conductor of that train, and by the jury,
in connection with the general rules; that such con-
struction would have required that No. 19 obey the
general rules in all respects, excepting in the one that it
should run ahead of time. To have so construed and
acted upon the special order for train No. 19, knowing the
schedule time of No. 20 at the several stations, and being
required to leave no station unless it could safely reach
the next station in time to clear the main track five
minutes before the arrival of No. 20 at such station,
there would have been no collision. The general rules
were notice to No. 19 to keep out of the way of No. 20,
and No. 20 was given the preference of the right of way.
It was not only not negligence to give no notice to No.
20 that No. 19 was running extra, but such notice and
the fixing of a meeting place with No. 20, in the order,
were impracticable, since No. 19 necessarily must run
without a schedule, and with uncertainty as to the suc-

cess of completing the work of the several stations, and the degree of speed attainable. Not only so, but the obedience by No. 19 of the order, and the rules made the running of No. 20, by schedule, perfectly safe without notice. However, the issue of negligence, as presented by the allegations of any paragraph of complaint did not include the omission to direct, by the special order, a meeting place for said two trains, and the conclusion that the circumstances excused the giving of notice is unnecessary to the decision of this case. There being no issue upon that question the finding of the jury, in the tenth specification of the verdict, as to the failure to direct a meeting place for said trains should be disregarded. *Lake Shore, etc., R. W. Co.* v. *Stupak,* 123 Ind. 210; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186.

While doubting the sufficiency of the allegations of the second and third paragraphs of complaint as to the incompetency of the train dispatcher, we feel certain that no doubt can exist upon the proposition that the special verdict does not find, as a fact, that he was incompetent, nor that the appellant knew he was incompetent. Such findings are indispensable to a consideration of the question of the company's liability on the ground of its having employed an unskillful and incompetent servant. *Evansville, etc., R. R. Co.* v. *Duel,* 134 Ind. 156, and cases there cited.

It is true, that by the fifteenth specification of the verdict, it is found that Southern, while acting as train dispatcher, had issued forty orders for trains to run ahead of schedule time, and to depart from stations before the schedule time; that the dispatcher and the president of the company occupied offices in the same building during that period. These statements are evidentiary, and

are in no sense statements of the ultimate facts that Southern was incompetent, and that the company knew he was incompetent, and thereafter retained him. Such findings are not regarded. Elliott App. Proced., section 753, and numerous cases cited in note 1.

It is fairly inferable, however, from the same specification, that trains might leave stations and run ahead of time when ordered to do so by the train dispatcher. With this fact, it could not reasonably be held negligence simply to order and run a train as an extra train, or out of schedule time, and it would be far from showing that the train dispatcher was incompetent. It will be remembered in this connection that it was not found that in the forty cases the train dispatcher was not permitted by rule to so run trains, nor that he did so without even the notice to opposing trains for which the appellee's learned counsel earnestly contend in this case.

Not conceding that the complaint sufficiently alleges that the collision was due proximately to the negligence of the train dispatcher, and not deciding whether the train dispatcher and the deceased were fellow-servants, we will proceed to examine the special verdict, upon the appellee's contention that it finds that the collision was due to the negligence of the train dispatcher. It must be borne in mind that every fact essential to the appellee's recovery must appear to have been found and stated in the special verdict, or the appellant was entitled to judgment. *Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526 ; *Kurtz* v. *Carr, Admr.,* 105 Ind. 574 ; *Mitchell* v. *Colglazier,* 106 Ind. 464 ; *Stix* v. *Sadler,* 109 Ind. 254 ; *Meeker* v. *Shanks,* 112 Ind. 207 ; *Kehr* v. *Hall,* 117 Ind. 405 ; *Waymire* v. *Lank,* 121 Ind. 1 ; *Town of Freedom* v. *Norris,* 128 Ind. 377.

We think it may be conceded to be the law that a railroad company operating a complicated system of

trains is required to provide for the reasonable safety of the operatives of such trains against collisions; that it would not be a compliance with such requirement to direct one train to run by schedule, and another over the same track without schedule, in conflict with such schedule train, and without notice to the schedule trainmen, by rule or otherwise, or without some limitation upon the extra or non-scheduled train under which it would so run as to guard against collision with the schedule train. Such is the effect of the case of *Cincinnati, etc., R. W. Co.* v. *Lang, Admx.*, 118 Ind. 579, and cases there cited. There are many authorities to the proposition that it is the duty of a railroad company to use ordinary care and prudence in making and promulgating reasonably necessary and sufficient rules for the safe running of its trains, and for the government of its employes, so as to furnish them a reasonable degree of safety, taking into consideration the nature of the service. *Chicago, etc., R. R. Co.* v. *McLallen*, 84 Ill. 109; *Pittsburg, etc., R. W. Co.* v. *Powers*, 74 Ill. 341; *Kansas, etc., R. W. Co.* v. *Salmon*, 14 Kan. 512; *Besel* v. *New York, etc., R. R. Co.*, 70 N. Y. 171; *Rose* v. *Boston, etc., R. R. Co.*, 58 N. Y. 217; *Wright* v. *New York, etc., R. R. Co.*, 25 N. Y. 562; *Baltimore, etc., R. R. Co.* v. *State, ex rel.*, 41 Md. 268; *Cooper* v. *Central R. R., etc., Co.*, 44 Iowa 134; *Slater* v. *Jewett*, 85 N. Y. 61.

But this requirement does not deny the right of railway companies to vary from the time-tables in any instance, nor does it mean that every variation involves negligence on the part of the company. From the very nature of the business of carrying on an extensive railway system, trains must be expected to run out of schedule time, some from unavoidable delays and others as extra trains, carrying out an accumulation of freight

or passengers, beyond the line of business ordinarily expected and regularly prepared for. As said in the case last cited: "It is, at times, a necessity so to do, and a necessity so frequent as to fall within the occurrences that a railway servant is bound to expect in the course of his employment. Even as regards the public and passengers, a railway manager has a right, when needs press, to vary from his general time-table. All that can then be required from him by the public and passengers is that, when he makes a variation, he act under it with reasonable care and diligence." This, as there further said, and as we now say, was all that a servant could ask or expect. If, therefore, it is found that the appellant made and promulgated such rules as, by their faithful obedience, reasonable safety was secured to operatives of schedule trains against collision with extra trains, the appellant must be held to have performed its duty in this respect. The special verdict before us not only fails to find that the appellant had no rule by which the operatives of extra trains were to so run as to protect regular trains from collision, but it is, as we have seen, expressly found that the company maintained rules under which regular trains might be converted into extra trains; that trains of an inferior class should clear the right of way for trains of superior class, by taking a side track at least five minutes before the arrival of any schedule train at the last station to which it was safe for such inferior train to run; that No. 19 wholly failed to act in accordance with said rules, and did not take the side track at Pursell, where No. 20 could have passed in safety, but continued beyond said station to where the collision occurred. Thus it appears that obedience to said rules by No. 19 would have made the passage of No. 20, running by the schedule, entirely safe. A rule easily followed by servants, and, when

followed, securing safety to co-servants, is a reasonable compliance with the duty owing by the master to his servants upon this question. As held in *Rose* v. *Boston, etc., R. R. Co., supra,* obedience to the regulations of a railway company, in regard to the running of trains, is a matter of executive detail, which neither the corporation, nor any general agent, can personally oversee, but as to which employes must be relied on. If those employes fail in their duty, by breaking existing regulations, and, in consequence, other employes are injured, no action can be maintained for the injury, as it will be deemed to have been caused by the negligence of a fellow-servant.

As we have seen, the negligence of those in charge of No. 19 was the proximate cause of the collision, and the order of the train dispatcher was not negligently issued. That the operatives of No. 19 were the fellow-servants of the unfortunate engineer, Tohill, is not questioned by appellee's counsel, but is conceded. That injury, resulting from the negligent act of a fellow-servant, creates no liability against the master, is not only well settled, but is conceded also by appellee's counsel. It was error, therefore, to deny the appellant's motion for judgment upon the special verdict. In this view of the case it is unnecessary to pass upon the sufficiency of the complaint, though we incline to doubt its sufficiency, and it is unimportant that we should pass upon the motion for a new trial. The judgment is reversed, with instructions to the circuit court to sustain the appellant's motion for judgment on the special verdict.

Filed October 16, 1895.

## ON PETITION FOR REHEARING.

HACKNEY, C. J.—Counsel for the appellee urge the granting of their petition, insisting that we erred in

considering the evidence; in determining the sufficiency of the facts specially found to withstand appellant's motion for judgment; that we should have held the complaint bad; that we should have directed a new trial; that we overlooked the law that the fellow-servant rule is no exemption where the negligence resulting in injury is the combined act of the master and the fellow-servant; that we failed to observe the rule which requires the master to supply his servant with a safe place to work, and that we were in error in holding upon the facts specially found, that the proximate cause of the injury was the fault of those operating train No. 19.

We are satisfied that upon a second reading of the original opinion counsel will observe that in passing upon the sufficiency of the facts found specially we were careful to point out and discriminate between the facts so found and certain rules proven without question. The rules so proven had their place in the opinion to demonstrate the entire absence of a cause of action, excusing our refusal to pass upon, and the futility of the granting of, the motion for a new trial. Combining the facts found with those which were omitted from the special verdict, it was made clear that, though much stronger than the facts pleaded in the complaint, the appellee had no right of recovery. This course further illustrated the propriety of passing upon that question in the case which should put at rest a fruitless litigation.

That the fellow-servant rule has no application is urged upon the false premise that the fellow-servant's negligence combined with that of which the train dispatcher was supposed to have been guilty. We made clear, we think, the proposition that the special verdict did not find either that the train dispatcher was negligent or that the company knew him to be an unskilled or neg-

Evansville and Terre Haute Railroad Co. *v* Tohill, Admx., etc.

ligent servant.    If he stood in the relation of a vice principal we were not at liberty to supply an omission in the verdict by an inference that he had been negligent. If we had been permitted to supply any fact, it would have been shown, as incidentally disclosed by reference to the evidence, that he was not negligent.    The duty devolving upon the company to supply the decedent with a safe place to work was not and is not a question in the case.    The death of the engineer was due, not to defects in place or appliance, but directly to the negligence of a fellow-servant who disregarded the general rules of his employer, failed to observe them in connection with his special order, and, as the jury found, ran past a station where he should have taken a side track and waited for No. 20 to pass in safety.    In this view of the question the negligence of the fellow-servant was the only cause of the injury and necessarily the immediate cause.    The discussion of counsel seems to rest upon the error of supposing that the special verdict, like a general verdict, should be supported by every reasonable intendment and hypothesis upon which the conclusion of liability could be supported.    That such is not the rule we showed very clearly in the original opinion.    Having again considered the questions in the case, and feeling satisfied with our conclusion, the petition is overruled.

Filed December 13, 1895.

NOTE.—On the question whether a train dispatcher is a fellow-servant of trainmen, the authorities are found in a note to *Little Rock & M. R. Co. Burry* (Ark.), 25 L. R. A. 386).