TERRE HAUTE AND INDIANAPOLIS RAILROAD CO.
v. BECKER, ADMINISTRATRIX.

[No. 17,090.   Filed November 10, 1896.]

RAILROAD COMPANIES.—*Duty as to Notice of Whereabouts of Work or Wild Trains.*—A railroad company operating a single track road, owes no duty to its employes upon its regular trains to adopt a rule requiring notice to be given to such employes of the whereabouts of work or wild trains, in addition to a rule printed with time table of all regular trains, requiring the conductors and enginemen of all work or wild trains to keep their trains out of the way of all regular trains, and in no case to occupy the main track of the road within ten minutes of the time of any regular train. *p. 215.*

SAME.—*Presumption that Employes Will Discharge Their Duty.*—A railroad company has a right to presume that its servants in charge of a work train will discharge their duty as provided by a rule requiring them to keep out of the way of all regular trains, and is exempt from liability for injuries resulting from a violation of the rule by an employe when the injury is the direct or proximate cause of such violation. *p. 217.*

SAME.—*Rules for Protection of Employes.*—It is the duty of a railroad company to adopt and enforce suitable rules or regulations for the protection of employes, and the company is not liable for injuries resulting from the violation thereof. *p. 217.*

SPECIAL FINDINGS. —*When may be Disregarded.*—Special findings that are of the nature of legal conclusions can serve no purpose in a special verdict and may be disregarded. *p. 219.*

From the Cass Circuit Court. *Reversed.*

*Bayless & Guenther, McConnell & Jenkins,* and *Miller, Winter & Elam,* for appellant.

*D. H. Chase,* and *D. D. Fickle,* for appellee.

JORDAN, J.—Mary A. Becker, as the administratrix of her deceased husband, Martin Becker, sued appellant to recover damages on account of its alleged wrongful act, which resulted in the death of the decedent while in the service of appellant, serving as a fireman upon one of its freight trains.

There was a special verdict returned by the jury, and upon it the court rendered judgment in favor of

appellant upon the second paragraph of the complaint, and in favor of appellee upon the third paragraph for $6,000.00, the sum awarded by the jury.

This latter paragraph, after setting out the character and surroundings of appellant's railroad, especially that part of it lying between Crawfordsville Junction and Rockville, and after further averring that its road was "a single track railroad," and operated by "telegraph orders" from the company's main office at the city of Terre Haute, and that the death of Martin Becker was occasioned by the train upon which he was firing, colliding with a certain train which, on the day of the fatal accident, had been, by appellant's train dispatcher, ordered to "work wild," etc., then apparently proceeds upon the theory that said accident was due to the neglect of the appellant to notify decedent and those in charge of the train upon which he was at the time at work, of the "whereabouts" of the train which had been ordered to "work wild."

The sufficiency of the paragraph upon which the special verdict is founded is assailed, but as the questions involved are better presented, under the special verdict, we may address our consideration to it, without directly passing upon the sufficiency of the paragraph in controversy. Omitting the facts found by the jury, which are not essential to the determination of the principal legal propositions at issue in this appeal, we may properly set out the remainder of the special verdict, which is as follows:

"2. That said railroad between said cities of Terre Haute and Logansport on and before said date consisted of but one main track, with switches and side tracks at intervening stations, and was a single-track railroad, having a line of telegraph along said main track from said city of Terre Haute to said city of Lo-

Terre Haute and Indianapolis Railroad Co. *v.* Becker, Administratrix.

gansport, and had telegraph offices at all the principal stations on said railroad, including the stations of Judson and Waveland, but had none at Dooleys, with the principal telegraph office in the city of Terre Haute, at which point the chief train dispatcher for said defendant had his headquarters and offices, and from which point said defendant controlled the movements of its trains on said railroad by orders through the use of its said lines of telegraph.

"3. That on and before said 10th day of December, 1889, the defendant was operating and running four regular trains, two of which were passenger and two were freight, daily, southbound; and four regular trains, two of which were passenger and two were freight, daily, northbound over said railroad between the said cities of Terre Haute and Logansport; the time of the departure and arrival of said trains at the different stations on said railroad were fixed by said defendant, and printed in printed time tables, and issued to all its servants engaged then and there in operating and running said trains.

"That on the backs of said time tables were printed rules, made by said defendant for the direction and government of all its servants engaged in running and operating said trains, all of which rules were in force on and before said 10th day of December, 1889.

"That by said rules of the defendant it was the duty of conductors and enginemen of all work and wild trains to keep their trains out of the way and off the time of all regular passenger and freight trains of the defendant, and in no case to occupy the main track within ten minutes of the time of any regular train.

"That said rule 61 on said time table was as follows, to-wit:

" 'All work and wild trains will keep out of the way and off the time of all regular passenger and freight

trains, and in no case occupy the main track within ten minutes of the time of any regular train.'

"That by the said rules of the defendant it was the duty of conductors of all wood and work trains of defendant at the close of each day to report to the dispatching office of said defendant by telegraph the limits of the main track they intend to occupy the following day with their trains, and to never exceed the limits specified, without special telegraph or written authority.  That rule 82 on said time table was as follows, to-wit:  'Conductors of all wood and work trains must, at the close of each day, report to the dispatching office by telegraph the limits of the main track they intend to occupy the following day, and must never exceed the limits specified, without special telegraph or written authority.'

"That by the said rules of the defendant, enginemen were held accountable for the speed of their trains and the due observance of signals ahead, and were equally responsible with the conductors of their trains for keeping off the time of other trains.  That rule 101 on said time table was as follows, to-wit:  'The enginemen will be held accountable for the speed of the train and due observance of signals ahead, and will be equally responsible with the conductor for keeping off the time of other trains.'

"That by the rules of the defendant, telegraph orders from the dispatching office of the defendant to its conductors and enginemen were to be sent by defendant's train dispatchers personally, and said train dispatchers in giving and sending such orders in the line of duty represented the superintendent of the defendant and had authority to act and direct the conductors and enginemen of the defendant in respect to the movements of trains under their care and control. That rule 118 on said time tables was as follows, to-

wit: 'Train dispatchers shall, themselves, send all messages involving the movements of the trains, and must not permit another person to do it for them.'

"That rule No. 119 on said time table was as follows, to-wit: 'All special orders by telegraph for the movements of trains will be numbered consecutively, commencing with No. 1 on the first day of each month, and must be sent to all trains named in the order, at the same time addressed to the conductors of the trains for which they are intended, and signed by the train dispatchers, who, in the line of their duty, represent the superintendent.' That by the said rules of the defendant all trains were to be run under the direction of the conductors, except when their directions conflicted with the defendant's rules, or involved risk or hazard, in which case the enginemen were declared to be equally responsible with the conductors.

"That rule 80 on said time table was as follows, to-wit: 'All trains must run under the direction of the conductor, except when his directions conflict with these rules, or involve risk or hazard, in which case the enginemen will be held equally responsible with the conductor. Conductors will be held responsible for the safe management of their trains, and for the proper behavior and performance of duty by their trainmen. They must not allow any person to ride in the baggage, mail or express cars, whether connected with the road or not, except those whose duties require them to be there.'

"4. That on and before the 10th day of December, 1889, the stations of defendant's railroad, going north from the station of Rockville, were situated in the following order and distance north from said Rockville, to-wit: Sand Creek, four and two-tenths miles; Judson, seven and six-tenth miles; Dooley, eleven and two-tenth miles; Waveland, fourteen and seven-tenth

miles; that Crawfordsville Junction was twenty-nine miles and five-tenths north of said Rockville.

"5. That on and before the said 10th day of December, 1889, the main track of said defendant railroad between the stations of Crawfordsville Junction and Rockville was crooked and full of short and sharp curves, and between the stations of Waveland and Judson the said main track followed the general course and crooked windings of Little Raccoon Creek for a distance of about eight miles, and was full of short curves, where the approach of trains in either direction on said track was hidden from the view of defendant's servants on trains coming from the opposite direction by bluffs, hills, woods and brush, and between the stations of Waveland and Dooley, and for a distance of four miles on said track, there were six or seven short and sharp curves in said track, and also a reverse curve of very short radii, with high banks of earth and trees on the side of said track, and particularly dangerous to servants of said defendant running and operating its trains of cars thereon, by reason of their inability to see trains approaching from the opposite direction on account of said curves, banks of earth, trees and brush, in time to prevent collisions and accidents to said trains and to themselves.

"6. That on and before the said 10th day of December, 1889, the plaintiff's decedent, Martin Becker, was a servant of the defendant, and then and there employed and engaged in the service of the defendant as a fireman on defendant's locomotive engine No. 117, which engine, on said date, and at the time of the collision, hereinafter found, was attached to and hauling one of the defendant's regular freight trains, known as local No. 60, and northbound, and was then and there between the stations of Dooley and Waveland on the defendant's main track, and then and there on

time according to the time tables and rules of the defendant, and having then and there the right-of-way and track against all wood, work and wild trains of the defendant, and running then and there at a speed not exceeding twenty miles per hour, in accordance with the rules of the defendant. The said engine No. 117, upon which the plaintiff's decedent, Martin Becker, was then and there engaged in his duties as fireman aforesaid, was run into and collided with another of defendant's engines, to-wit: No. 111, which was then and there attached to and engaged in hauling a work and wild train of the defendant southbound, and on defendant's main track, and the plaintiff's decedent, Martin Becker, was then and there, by means of said collision, crushed and injured by and between said colliding engines and their tenders, and then and thereby instantly killed. That said Martin Becker did not in any way contribute to his said injuries or death, nor did he see said colliding engine No. 111 in time to save his life, nor was he guilty of any negligence in causing or occasioning the said collision wherein he lost his life, as aforesaid, and was at the time of his death in the performance of his duties as fireman aforesaid; and the plaintiff was not guilty of any negligence, nor did she contribute in any way in causing the injuries or death of said Martin Becker, her decedent.

"7. That on said 10th day of December, 1889, the said local, or No. 60 train, was in charge of one James H. Hardesty, as conductor, and said engine No. 117, upon which said Martin Becker was fireman, was in charge of one William Widgeon, as engineman, and that both of said persons were servants of the defendant at the time said local, No. 60, train left its terminal point, to-wit: Terre Haute; and also at the time said Becker was killed.

"That said local train left Terre Haute, northbound, at 4:00 o'clock a. m., on said date, on time, and arrived at said station at 7:55 a. m. and on time on said date, going north; that defendant had then and there at said station of Judson a telegraph office and telegraph line in order, and an operator; that said local train stopped at said station of Judson on its arrival there, and the said conductor Hardesty reported for orders to the defendant's telegrapher at said station, but received none concerning the said work or wild train or its whereabouts whatever.

"8.   The said conductor Hardesty and said engineman Widgeon and said decedent Martin Becker were ignorant of the whereabouts of said work or wild train on said 10th day of December, 1889, and previous to the time of said collision, and that said defendant had not given them, or either of them, any information or notice whatever thereof, and that they, nor either of them had any information or knowledge of the fact that said work train was on said date working wild on said main track between the stations of Crawfordsville Junction and Rockville on said date.

"9.   That on said 10th day of December, 1889, the defendant's said engine No. 111, which collided with said engine No. 117, was in charge of Edward J. Tritt as engineman, and the said work or wild train to which the said engine No. 111 was attached to and engaged in hauling at the time of the collision hereinbefore found, was in charge of Frank L. Campbell as conductor, and that both of said persons were then and there servants in the service of the defendant.

"10.   That on the 10th day of December, 1889, and before the collision hereinbefore found, the said Frank L. Campbell, as conductor of the defendant's work or wild train aforesaid, at Crawfordsville Junction, a

station on said defendant's railroad, received telegraphic orders from the train dispatching office at Terre Haute, signed by the train dispatcher of said defendant, in respect to the movement of said work or wild train for said 10th day of December, 1889, wherein and whereby the said conductor was ordered and directed 'to work wild to-day between Crawfordsville Junction and Rockville,' and was so working wild with his said train at the time of said collision, and running at the rate of twenty miles per hour with his said train.

"11.  That it was the duty of said conductor Campbell and engineman Tritt, on said 10th day of December, 1889, to side track the said work train of the defendant, then and there in their charge, at the said station of Waveland, and then and there await the arrival and passage at said point of said local No. 60, going north, before pulling out with the said work train going south on the main track of said defendant's railroad.

"12.  That said local No. 60 was due at the station of Dooley at 8:27 a. m., and at the station of Waveland at 8:52 a. m., on said 10th day of December, 1889, and was on time at said station of Dooley; that, notwithstanding said facts and their duty in that regard, the said conductor Campbell and said engineman Tritt recklessly, carelessly, and negligently pulled out from the station of Waveland on said date with the said work train on the main track of defendant's railroad, southbound, and before the arrival of said local, or No. 60, and on the time of said local, without taking any precaution to prevent a collision with the said local No. 60, northbound, as aforesaid, and ran said engine No. 111 at a speed of twenty miles per hour and collided with the said engine No. 117 at and on the reverse curve on said main track, between said sta-

tions of Waveland and Dooley, on said 10th day of December, 1889, at 8:40 a. m. of said day, and then and there, and thereby, by means of said collision, instantly killed the plaintiff's decedent, Martin Becker, who was then and there engaged in his duties as fireman on said engine No. 117, and not in any way at fault in respect to said collision.

"13.   That the defendant, in failing to notify the decedent, Martin Becker, the conductor, Hardesty, and engineman, Widgeon, in charge respectively of said local, or No. 60, train, and engine No. 117, hauling said train, on said 10th day of December, 1889, at or before said train and engine arrived at the said station of Judson on defendant's said railroad, and before the said collision, of the whereabouts of said work train and engine No. 111, hauling the same, on said date, caused the collision aforesaid and the death of said Martin Becker, and was guilty of negligence in failing to notify said Becker, Hardesty and Widgeon of the whereabouts of said work train and engine No. 111, on said day before said collision.

"14.   That it was the duty of the defendant, considering the many short curves and reverse curves on its main track, and the inability of its servants operating its trains, to see approaching trains coming from the opposite direction thereon, on account of the many short curves and reverse curves on its main track, and the bluffs, banks of earth, hills, trees and brush on the side of the main track, existing between said stations of Crawfordsville Junction and Rockville, on and before said 10th day of December, 1889, to have notified the servants of said defendant, then and there in charge of said local, or No. 60, train, and said engine No. 117 hauling the same, including the decedent, Martin Becker, of the order given by said defendant's train dispatcher to said conductor Campbell, in charge

of said work or wild train on said 10th day of December, 1889, 'to work wild' on that day with his said train between said stations of Crawfordsville Junction and Rockville.

"15.   That the defendant, for more than one year prior to the said 10th day of December, 1889, had knowledge of the many short and sharp curves and reverse curves on its main track, and of the inability of its servants to see approaching trains coming from an opposite direction on said main track on account of said curve and reverse curves, high banks of earth, hills, trees and brush on the side of said track, and existing between said stations of Crawfordsville Junction and Rockville, and of the danger to its servants operating its trains from collision with wild trains at or near reverse curves between said stations; and negligently failed to make any rule requiring its train dispatcher to notify regular train crews that wood or work trains were working wild between said stations in time to prevent collisions or accidents at or near said reverse curves, as it was in duty bound to do for the protection of its servants operating its trains between said stations."

It will be seen, among others, that the following facts are disclosed by the special verdict: that appellant's road was a single-track railroad, leading from Logansport to Terre Haute, consisting of a main track with switches and side tracks, and had a line of telegraph along its entire road; that on and before December 10, 1889, being the day on which the fatal collision occurred, the company was operating and running daily southbound over its road four regular trains—two passenger and two freight—and also a like number running north.   The time of the arrival and departure of each of these trains at the respective stations along the road was fixed by the appellant and

printed in time schedules, or time tables, and these were issued and delivered to all of its servants then engaged in operating said trains. On the inverse sides of these time tables were printed rules adopted by appellant for the direction and government of all of its servants engaged in operating trains; that under these rules conductors and enginemen of all work and wild trains were required to keep the same out of the way and off of the time of all regular passenger and freight trains, and in no case to occupy the main track of the road within ten minutes of the time of any regular train; that by these rules, the enginemen and conductors were equally responsible for keeping off of the time of other trains. On said 10th day of December appellee's decedent was in the service of appellant as a fireman on engine No. 117, which, on that day, was attached to and hauling a regular freight train known as local No. 60, which was, on said day, northbound, and at the time of the collision was running on time between the stations of Dooley and Waveland, and was entitled to the right-of-way as against all work and wild trains; that on said date, and before the accident in question, the appellant, through its train dispatcher, the latter, under the rules in giving and sending orders in the line of duty, represented the superintendent of the company, sent an order to the conductor in charge of the work train, which was being drawn by engine No. 111, to "work wild" with his train on that day between Crawfordsville Junction and Rockville. That the conductor and engineman of said work train were the servants of appellant; That local No. 60 was due at the station of Dooley at 8:27 a. m., and at Waveland at 8:52 a. m.; that it was the duty of conductor Campbell and engineman Tritt, in charge of said work train, to have side tracked their train at Waveland and there remain until the

arrival and passage of No. 60, upon which Becker was fireman, but disregarding their duty in this respect: these servants of appellant "carelessly" and "negligently" "pulled out from the station of Waveland on and to the main track" and started south before the arrival at this station of No. 60, "and on its time," without taking any precaution to prevent a collision with No. 60, and while running between said stations of Dooley and Waveland at a speed of twenty miles per hour, said work train met and collided with the northbound local No. 60, on the reverse curve of the track, at 8:40 a. m., on said 10th day of December, and thereby killed said Martin Becker; that previous to this collision the appellant gave no notice to the deceased, nor its servants in charge of said local No. 60, of the "whereabouts" of this work train on that morning, and that neither he nor they had any knowledge that said train on that day was working wild between Crawfordsville Junction and Rockville.

The principal insistence of counsel for appellee in answer to the contention of counsel for appellant, is, that, under all the circumstances, negligence resulting in the death of the deceased servant must be imputed to the appellant for the following reasons: First. In ordering the work train to work wild between Crawfordsville Junction and Rockville, over a part of its road which they insist, under the facts, is shown to be dangerous. Second. Failure to notify Becker and the servants in charge of the train upon which he was at work, of the "whereabouts" of the wild train on the morning in question previous to the accident. Third. Failure to adopt a rule requiring notice to be given to its regular trains of the "whereabouts" of wild trains.

These facts, in connection with the negligence of the employes in charge of the work train, they con-

tend, constitute the proximate cause of the fatal collision.  It may be conceded, under certain circumstances, a railroad company would be guilty of actionable negligence in ordering a train to "work wild" in the absence of notice to its servants along its line, of the fact, in the event the injury or death of one of the latter was due to the failure in whole or in part to give such notice.  But, in the case at bar, under the facts and circumstances as they are shown, we are of the opinion that it cannot be affirmed as a legal proposition, that the death of appellee's decedent was due to or resulted from any negligence of the appellant.  The reasons for this conclusion, we think, are obvious.  The time at which all of the regular passenger or freight trains on appellant's road, were due to arrive at and depart from each station, had been fixed and published in printed schedules or time tables, and these had been delivered to all of its servants engaged in operating its trains.  It had also adopted and caused to be printed and delivered to such. servants a series of rules and regulations for their guidance and control in conducting and running trains under their charge.  One of these rules expressly required of and enjoined upon conductors or others of its employes in the charge of work and wild trains, the duty to keep such trains out of the way of all regular passenger and freight trains, and under no event were they to occupy the main track within ten minutes of the time of any regular train, etc.  On the morning of the accident in question the jury find, in effect, that the conductor and engineman in charge of the work train which had been ordered to "work wild" disregarded, or rather neglected, to discharge their required duty in failing to side track their train at Waveland, and there remain until the arrival and departure from said station of the local freight upon

which Becker at the time was serving as fireman; that notwithstanding their duty in that respect they "recklessly," "carelessly" and negligently left said station with their train before the arrival of local No. 60, and on the time of the latter, without taking any precaution to prevent the collision whereby Becker was killed.

The conclusion that the death of appellee's decedent was wholly due to the negligence of the conductor and engineman in control of the work train, in leaving with their train the station as they did, before the arrival of No. 60, and running on its time, cannot be successfully controverted, and is the only reasonable and legitimate conclusion that can be deduced from the facts in the case. Appellee admits that the employes in charge of this work train were the fellow-servants of the deceased, hence, under a well settled rule, there can be no recovery as against appellant on account of his death, resulting as it did, under the facts, from their negligence. It clearly appears, we think, from the finding of the jury, that the death of the servant in question must be attributed solely to the negligence of his fellow-servants, and therefore precludes a recovery.

It cannot be said that ordering the train in question to "work wild," under the circumstances, was an act of negligence, and when, in this connection, we consider the rules of appellant relative to the duty required of those in the control of wild trains, the law will not authorize us in holding that in addition to these, it was also incumbent upon the company to notify Becker and the other servants in control of his train of the fact that the train in controversy was "working wild," and at what point on the road it was previous to the collision. This duty, under the facts, was not required of the appellant, and its omission to

give notice cannot be said to render it guilty of negligence. It had the right to presume that its servants in charge of the work train would discharge their duty as provided by the rules, and would keep out of the way of all regular trains, and not run upon the time of any of the latter. Neither does it appear that if such notice had been given that the fatal accident would have been avoided. Those in charge of the local freight were not required by the rules to look out for the wild train, but the employes in charge of the latter were expressly required to keep out of the way and off of the time of the former, hence, under the circumstances, we fail to recognize what purpose, if any, the notice for which appellee contends would have served. Having adopted and promulgated these rules and time schedules, appellant, when it gave the order to "work wild," had the right to presume that they would be obeyed by its servants in control of the work train.

In *Rose* v. *Boston, etc., R. R. Co.,* 58 N. Y. 217, it is said: "It may be conceded that it is the duty of a railroad corporation to prescribe, either by means of time tables or by other suitable modes, regulations for running their trains with a view to their safety; but it is obvious that obedience to these regulations must be intrusted to the employes having charge of the trains. Such obedience is matter of executive detail which, in the nature of things, no corporation or any general agent of a corporation can personally oversee, and as to which employes must be relied upon."

While it is the duty of the master, engaged in such complex business as operating a railroad, to adopt and enforce definite and suitable rules or regulations for the protection of his servants, when, however, this duty has been discharged, he is exempt from liability for injuries resulting from a violation of the rules by

an employe when the injury is the direct or proximate cause of such violation.   Wood Railroads, Vol. 3, section 382; Patterson Railway Accident Law, section 296; Bailey's Master's Liability, p. 72; *Pennsylvania Co.* v. *Whitcomb, Admr.,* 111 Ind. 212; *Cincinnati, etc., R. W. Co.* v. *Lang, Admr.,* 118 Ind. 579; *Evansville, etc., R. R. Co.* v. *Tohill, Admx.,* 143 Ind. 49.

We are of the opinion that in the adoption and promulgation of the time schedules and the rules and regulations in respect to irregular trains upon its road, that appellant exercised ordinary care and diligence to secure the safety of its employes, engaged in operating its regularly scheduled trains, and protection from any supposed danger that might be reasonably due to the operation upon its road of irregular trains; consequently, it was not bound to notify servants on its regular trains to be prepared for such irregular train as the one in controversy.

Under the circumstances in this case, the peril which the decedent was subjected to by reason of such irregular trains was a risk incident to the service which he had entered, and one which he assumed under his contract of employment.

We do not consider that the fifth finding of the jury relative to the curves in appellant's road between Waveland and Dooley, and its surroundings, under the circumstances, can serve to exert any influence over the question of appellant's negligence.

In *Tuttle* v. *Detroit, etc., R. W. Co.,* 122 U. S. 189, it is said: "The interest of railroad companies themselves is so strongly in favor of easy curves as a means of facilitating the movement of their cars, that it may well be left to the discretion of their officers and engineers in what manner to construct them for the proper transaction of their business in yards, etc.   It must be a very extraordinary case, indeed, in which their

discretion in this matter should be interfered with in determining their obligations to their employes. The brakemen and others employed to work in such situations must decide for themselves whether they will encounter the hazards incidental thereto; and if they decide to do so, they must be content to assume the risks."

The 13th and 14th findings may properly be considered as being of the character of legal conclusions, and hence can serve no purpose in a special verdict, and must, therefore, be disregarded. Elliott Gen. Pract., Vol. 2, section 931, and authorities there cited.

The 15th finding is not within the issue of the 3d paragraph of the complaint. No reasons are urged in support of the cross-errors assigned by appellee, hence they must be deemed as waived.

The court erred in awarding judgment upon the special verdict in favor of appellee, for which error the judgment is reversed, and the cause is remanded, with instructions to the lower court to render its judgment upon the special verdict in favor of appellant.