BONNER & EDDY, RECEIVERS, V. J. C. LA NONE.

No. 3001.

1.  **Duty of Master to Employe.**—A railway company is responsible to one of its servants for injuries sustained without fault or negligence on his part from its negligent construction or erection of an appendage of its road which subjects its employes to unnecessary hazard and danger, and which the injured party could not reasonably have anticipated, and of which he was not informed.

2.  **Fact Case — Negligence.** — See facts sustaining a verdict for damages for personal injuries caused by a collision with a switch stand placed too near the track.

APPEAL from Houston.  Tried below before Hon. F. A. Williams.

Appeal from a judgment for $4000 damages for personal injuries in favor of appellee, an employe of appellant.  The facts are in the opinion.

*Gould & Camp*, for appellants.—1.  The rule of contributory negligence requires that every one should take reasonable care of his own person or property, and that when both parties are in fault the law will withhold its aid and leave them to the consequences of their own wrong. Railway v. Smith, 52 Texas, 184.

2.  If plaintiff saw the switch stand and failed to notice its distance from the track—knowing that he would immediately pass by there on a car—he is guilty of such want of care as precludes a recovery.  And if but for his fault in failing to hold himself close enough to the car to avoid the switch stand he would not have been injured, he is not entitled to recovery.  Gafney v. Railway, 31 Am. and Eng. Ry. Cases, 265; Davis v. Railway, 28 Am. and Eng. Ry. Cases, 440.

*Link & McMeans*, for appellee.—1.  A railway company is responsible in damages to an employe for an injury resulting, without his negligence, from a tank, switch stand, or other appendage of the road so negligently constructed as to subject the employe to unnecessary and extraordinary danger which he could not reasonably anticipate or know of, and of which in fact he was not informed.  Railway v. Oram, 49 Texas, 341.

2.  Appellee was not bound to examine appellant's tracks, switch stand, and appendages to see that they were properly constructed, but was required to exercise only that degree of care in the use of such appliances essential to the performance of his duty as men of ordinary prudence would use under the same circumstances.  Railway v. Crenshaw, 71 Texas, 340.

HOBBY, PRESIDING JUDGE.—This is an action for the recovery of damages for personal injuries sustained by the appellee in December, 1889, while in the service of the appellants.

The case made by the proof is as follows:   Appellee was at the time stated employed as night switchman in the yards of the International & Great Northern Railway at Palestine, Texas, which road was being operated by appellants as receivers, duly appointed as such.

. It appears that the appellee arrived at Palestine on the 30th day of November, 1889, and in about an hour after his arrival in that city he was employed as night switchman by appellants, the duties of which service he began to perform at once on the night of November 30, 1889, and worked until about 3 o'clock in the morning of December 1.   His "duties consisted of switching cars, coupling and uncoupling them, and throwing switches," etc.   While engaged in the discharge of these duties on the night of December 2, 1889, at place stated, and while riding on the ladder of a box car, as was the custom of night switchmen in performing this service, he was knocked off by one of the targets or arms of an upright switch stand erected by appellants close to the track.   He was thrown to the ground, his right arm was run over by the cars, and the bones so crushed and mashed that amputation of the arm was necessary and ensued.   There was proof that appellee had not been informed of the proximity of the switch stand to the track, and there was evidence tending to show that he did know of it. This upright switch stand had been erected at this locality, near the track, in March or April, 1889.   It had taken the place of a flat or ground switch which had been previously in use at the same place, and which ground switch, if it had remained or been replaced by one of a similar kind, would not, according to the testimony of the foreman of appellants' track department, have injured appellee in the manner he was injured by the upright switch stand.   The evidence shows that the switch stand which knocked appellee off was about six feet high and that it was too near the track, some of the testimony locating it more than four feet from it and some at two and a half feet distant.   The actual measurement of one witness placed it twenty-one inches from the ladder of a passing box car.   It was at a point where the track curved in toward it, the lower or inner portion of the curve "throwing a box car, at a height of six or eight feet, some three inches nearer the switch stand, thus reducing the distance between the box car ladder and the switch stand to about eighteen inches."   "Whether that distance is enough for a man to pass by in safety depends on how he is on the car—that is plenty of room for a man to pass through, but to a new man going in there at night it might be a little dangerous," is the testimony of one witness in the service of appellants.   It was proved that appellee was a new man in that yard and had worked there only two nights.   It seems appellee was not told of this switch stand, and he had passed by it in the dark for the first time a few minutes prior to his injury.   Appellee was an experienced switchman, had worked for years in several other yards in that capacity.   In these yards the flat

or ground switch was used.   One witness, who had about eleven years' experience as a switchman, testified that when the "tracks are close together, as was the case where appellee was injured, the ground switches are used.   Never saw an upright one in such a place until he saw this. The ground switch is the safest where the tracks are close together," as in this case.   There were four targets or arms on the switch stand at the time of appellee's injury.   He was knocked off by one of them. This target was taken off after his injury, which gave a greater space between the car and switch stand of about eight inches.

It was also shown by the evidence that the yardmaster had been twice knocked off by this switch stand before appellee was injured.   He reported this fact to the trainmaster and told him it was too near the track and that some man would get hurt.   He (the trainmaster) refused to remove it.   This was about three weeks prior to appellee being knocked off.   The evidence shows that the "customary place for a switchman to ride from point to point in the yards is on the side of the cars or any other place he can get on, and when riding on the side of cars they have to cling to the ladder of the cars."   Appellee was so riding when knocked off.

Such is a synopsis of the proof made on the trial.   There was a verdict and judgment for plaintiff (appellee) for $4000.   The defendants appealed and their assignment of error is as follows:

"The court erred in overruling defendants' motion for a new trial, because the verdict of the jury is contrary to the law and the evidence, which evidence showed that plaintiff was in the employ of defendants at the date of the injury and was night switchman in defendants' yard at Palestine.   That he was hanging on the side of a box car in motion and was struck by a switch stand and knocked off and fell under the train and his arm cut off.   Evidence further showed that said switch stand had stood there about six months and was in constant use, and while it was rather near the track it was an equal distance between two tracks and was as far from each as possible to put it; that plaintiff knew where it was and had passed by it on foot only a few minutes before and knew, or by reasonable care could have known, its distance from the track; that there was room for a man's body to pass it on the side of a car, and plaintiff must have been carelessly hanging away from the body of the car or he would not have been hurt, and thus his injuries were the result of his own contributory negligence and the negligence of his fellow servants in not placing a lantern on said switch stand, and defendants are not liable."

The rule is well settled that the appellants are responsible in damages to one of their servants for injuries sustained without fault or negligence on his part, from the negligent construction or erection of an appendage of the road by them which subjects such servant to unnecessary

hazard and danger which he could not reasonably have anticipated, and of which there is proof that he was not informed.    Railway v. Oram, 49 Texas, 345.

The most favorable view which can be taken of the case in behalf of the appellants is that there is some conflict in the testimony.    We do not think that any discussion of the facts would demonstrate more satisfactorily than the foregoing statement taken from the record that the assignment of error is not well taken, and that there is nothing in the record which would authorize us to disturb the judgment, and we therefore think it should be affirmed.

*Affirmed.*

Adopted March 3, 1891.