NICHOLAS CONTENT *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.     January 17, 1896. — February 26, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Personal Injuries — Assumption of Risk — Action.*

If an employee of a railroad corporation, while starting down the side ladder of a moving freight car in the discharge of his duty, is injured by coming in contact with a car which was wider than the ordinary cars, and was standing on a side track which was parallel with the main track, he cannot recover in an action against the corporation for his injuries, if the position of the tracks was open and visible, and it was customary to receive and store such cars on the side track, and their use and size were known to the plaintiff.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. At the trial in the Superior Court, before *Blodgett*, J., the plaintiff testified that on December 13, 1893, which was the day of the accident, he was employed by the defendant on its Providence Division, where he had been working about four weeks as a "spare man"; that spare men were put in the places of those who happened to stay away from their work, otherwise they sat about waiting; that while in this capacity he had done a good deal of road work, running between Boston and Providence on freight trains, mostly at night; that between half past five and six o'clock in the evening, on the day of the accident, he was doing some switching with a switching crew in the yards at Boston; that the switching engine had gone out toward Roxbury on the track marked on a plan which was in evidence as the "fourth iron," to bring some cars; that it had snowed and rained about all day, and at this time was snowing a little and was cloudy; that coming in from Roxbury, Hart, the conductor, told him they were going to switch some cars into

the freight-house, and said, " Pull the head pin"; that when they got along to what was known as the " three-throw switch," the plaintiff, who was on the head car next the engine, started down the side ladder of the car; that he got down within the second or the bottom step, he could not say which, and was looking for the step around the end of the car so as to get down on the switchboard of the switcher to pull the pin in order to make the flying switch; that he had his right foot back, and just as he drew his head back something loomed up in front of him which he thought was a car, and he was struck; that that was the last he remembered; that there was no way to get down at that end of the car except by the side ladder, and he had to pull the pin at the end of the car next to the engine; that it was quite dark, and the smoke and steam from the engine made it still darker, so that you could n't see more than a car length; that when he passed under the bridge, just before reaching the three-throw switch, he looked ahead before starting down, but did not see any cars on the side track, or take any notice, or look anywhere along the line at all as he came down; that he was not aware that the side track was so close as it was; that he did n't know any more about one track than about another, because he had not been there long enough to learn; that this side track was about three or four hundred feet from the upper part of the yard, and about one hundred and fifty feet south of the Albany crossing; that he had never, up to that time, observed the side track at this place, nor noticed the position of cars there, as most of his time was taken up receiving motions from the rear end and giving them to the engineer; that at the time he was struck the train was running about ten miles an hour; that there were five or six box cars on the train, called fish cars; that the car on which he was going down the side was, he believed, eight feet and five inches or eight feet and seven inches in width, and the car overhung the rail about two feet, including the ladder; that the overhang of the cars called " Star Union cars," with one of which the plaintiff collided, was about two feet seven or eight inches; that these measurements he had made since the injury; that a Star Union car was an extra large box car, considerably larger than a fish car; that the fish cars were all of one size; that the " fourth iron " was a track used

largely for switching, and occasionally for a main line; that it was not a very smooth track, and was in a very rough condition, and this fact made the cars liable to sway a little and swing.

There were four tracks at the point where the plaintiff was injured. The other three tracks were not used for the main line. No. 1 track was used for a main line occasionally, and this fourth iron was used for a main line for freight purposes, and occasionally for passenger purposes. There was a derail, which is a kind of track which causes cars to run off if the switch is set against them. Derails were placed about far enough back from the main line so as to put the tracks about seven feet apart. The fish cars were fitted with passenger springs and trucks, which would give them more of a sway than a common car. No one had notified him up to that time while he was working in this yard that cars were likely to be so near the main line that they would not clear.

The Star Union cars were cars used by several lines of connecting railroads, which designated the cars in this manner for a particular line of transportation, and these cars were found on all the different railroads which made up that line. There were more or less of these cars all the time on the defendant's railroad, coming in and going out, and the plaintiff expected to find them on almost every train. He had often seen them before, and knew what kind of cars they were. He did not take particular notice of them, but knew that they were larger than the ordinary cars. The fish cars were used for a certain kind of freight. They ran everywhere on the road, more running between Stonington and Boston than elsewhere. They differed in some respects from ordinary freight cars, having a platform at each end.

The side tracks were used as storage tracks, and were generally filled with cars. At the place where the plaintiff was hurt, the side track was parallel with the track upon which the plaintiff was riding, and had not begun to curve in towards the other track. The Star Union car with which the plaintiff collided was between two and three car lengths from the three-throw switch.

At the close of the testimony, the defendant requested the judge to rule that the plaintiff could not recover. The judge refused so to rule, and submitted the case to the jury, who returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. H. Benton, Jr. & C. F. Choate, Jr.*, for the defendant.

*S. A. Fuller*, for the plaintiff.

ALLEN, J. There was no conflict in the evidence as to the material points. The position of the tracks was open and visible. The use and the size of the Star Union cars were known to the plaintiff. The side tracks were used as storage tracks, and were generally filled with cars. At the place where the plaintiff was hurt, the side track was parallel with the track upon which he was riding, and had not begun to curve in towards the other track. If the car had been left upon the curve, nearer the point of junction, the case would be different; but its distance from the track upon which the plaintiff was riding was no less than it must necessarily be, if standing upon the side track at all. The defendant did not owe it as a duty to the plaintiff to change the position of its tracks, or to discontinue the use of Star Union cars upon its railroad, or to make a change in its custom of storing these and other cars upon the side track; and therefore in a legal sense the defendant was guilty of no breach of duty and of no negligence towards him. If the plaintiff entered into the employment of the defendant, he must be held to have assumed the risk arising from these things. *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. *Fisk* v. *Fitchburg Railroad*, 158 Mass. 238. *Gleason* v. *New York & New England Railroad*, 159 Mass. 68. *Kleinest* v. *Kunhardt*, 160 Mass. 230. *Goldthwait* v. *Haverhill & Groveland Street Railway*, 160 Mass. 554. *Thain* v. *Old Colony Railroad*, 161 Mass. 353. *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287. *Tuttle* v. *Detroit, Grand Haven, & Milwaukee Railway*, 122 U. S. 189.

*Exceptions sustained.*