## TEXAS & P. RY. CO. v. SWEARINGEN.

(Circuit Court of Appeals, Fifth Circuit. April 7, 1903.)

No. 1,219.

1. MASTER AND SERVANT—CONTRACTS LIMITING MASTER'S LIABILITY—ASSUMPTION OF RISK.

An application made by a railroad switchman for employment, in which he stated his knowledge of the dangers arising from certain kinds of structures built alongside the tracks, is not admissible to establish his assumption of the risk from such a structure alleged to have been negligently placed too close to the track.

2. SAME—ACTION FOR INJURY OF SERVANT—QUESTIONS FOR JURY.

In an action by a railroad switchman to recover for injury received by being knocked from the side of a car, where he was riding in the course of his duty, by a track scale box erected by defendant in its switchyard near the track, the question whether plaintiff assumed the risk as one incident to his employment, either on the ground that the scale box was placed at a reasonably safe distance from the track, or that the danger was open and obvious, and was such that a reasonably prudent person engaged as plaintiff was must be presumed to have known of the same, is one for the jury, where there is a conflict in the evidence as to such facts.

3. SAME—RAILROAD SWITCHMAN—ASSUMPTION OF RISK FROM STRUCTURES BESIDE TRACK.

A switchman employed in railroad yards, where he is required in the performance of his duties to ride on the ladder on the side of freight cars while they are being moved, is not chargeable, as matter of law, with knowledge that a structure built by the company in the yards near to a track is so close to the track as to be dangerous to a person so riding merely because the structure itself is open to ordinary observation. It is the duty of the company to place its structures at such distance from the tracks as not to endanger its employés in the performance of their ordinary duties, and the employé has the right to presume that such duty has been performed, and is not charged with any duty of inspection to ascertain the exact distance of such structures from the track.

In Error to the Circuit Court of the United States for the Western District of Texas.

W. W. Swearingen, the defendant in error, instituted this action in the state court for El Paso county, Tex., from which court it was duly removed by the plaintiff in error to the Circuit Court. The pleadings of the plaintiff below present substantially the following allegations: That the defendant owns and operates a line of railway running into the city of El Paso, where it has tracks and switches constituting a general switch yard for the handling, switching, and shifting of both passenger and freight cars; that on and prior to the 7th day of February, 1902, he was in the employ of plaintiff in error as a switchman, working in its switch yard in the city of El Paso, and his duties were to couple and uncouple cars, shift switches, and assist in the placing, switching, and shifting of cars on the various tracks in the switch yard, which cars were moved by means of a locomotive; that he was under the direction and supervision of another servant of plaintiff in error called a "yardmaster"; that on the 7th day of February, 1902, while engaged in the performance of his duties, he was riding on the ladder on the side of a certain freight car of a train of cars attached to the locomotive, which ladder

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

¶ 3. See Master and Servant, vol. 34, Cent. Dig. §§ 556, 590, 619.

is placed there for employés to ride on while working, and which train of cars were going in a westerly direction along track No. 2 of the switch yards; that his body was swinging slightly out from the car, in the proper and usual position to ride on the ladder; that the yardmaster was at the east end of the train of cars, directing their movements by means of a lantern, it being in the nighttime, and plaintiff below was looking back for signals, as was his duty, when he came in contact with the scale box structure which had been negligently placed by plaintiff in error or permitted to remain so near the north line of the track as not to permit the passage of his body in the position in which he was riding, and he was thrown to the ground, and dragged along by the cars, and permanently injured; that the scale structure was of a permanent character, and had been at the same place for many months prior to the time he received his injury, and had been placed there and maintained and used by the plaintiff in error, or was permitted to remain there, plaintiff in error knowing, or could have known by the use of ordinary care, the location of it, and it was during all the time so close to the north rail of the track as to endanger the life and limb of defendant in error and other employés while engaged in their duties, and constituted a dangerous obstruction to the track—all of which was well known to plaintiff in error, or could have been known by the use of ordinary care, but it was unknown to the defendant in error; that in placing the scale structure or permitting it to remain at the place above recited the plaintiff in error was guilty of negligence, and the defendant in error received his injuries by reason of said negligence, for which he claims damages.

The defenses were: First. General demurrer. Second. General denial. Third. The special plea that the defendant in error's injuries were not caused by the negligence of the plaintiff in error; that the scale structure was not erected so near the track as to injure the defendant in error, but that the same was erected in a proper and safe manner, at a safe and proper distance from the track, and that the defendant in error was injured through his own negligence, and the careless manner in which he rode on the cars. Fourth. That, if said scale box structure was erected so near the track as to be dangerous to the defendant in error, he knew it, or could have known it by the use of ordinary care, and assumed the risk arising therefrom, in this: That he had been in the employ of the plaintiff in error, both as a switchman and brakeman, for a long time prior to the accident, and had worked in the yards and on the switches and on the track No. 2, on which he was injured; that track No. 2 is a switch track frequently used by employés of plaintiff in error and used by the defendant in error; that the scale box structure is about six feet high, five feet wide, and it and its location to the track is open, patent, and obvious to the sight—all of which was well known to the defendant in error, or could have been known to him by the use of ordinary care, and by the use of ordinary care he could have avoided the collision with it, and that he was injured through his own negligence. Fifth. That the defendant in error well knew the situation and location of the track scale box in relation to track No. 2, and assumed the risk arising therefrom, and was injured by his own negligence in riding upon the car in the manner in which he rode, and in not using proper care to avoid the collision, he knowing the danger, and that he was approaching the same.

The trial resulted in a judgment in favor of the defendant in error. The plaintiff in error assigns errors, as follows:

"(1) The trial court erred in refusing to permit defendant to introduce in evidence portions of the written application for employment as a brakeman on defendant's railroad, made by plaintiff to defendant on February 22, 1900, as shown by defendant's bill of exception, because said testimony was material to defendant, in this: That the questions asked plaintiff in said application, and the answer made thereto by plaintiff, show that plaintiff had notice of the location of the track scale box, and that he was in danger of being knocked off a car in passing same.

"(2) The trial court erred in overruling defendant's motion to instruct the jury to return a verdict for defendant, because the undisputed evidence established that said track scale box was erected in the defendant's yard and under the circumstances in a reasonably safe place and at a reasonably safe

distance and location from track No. 2, on which track plaintiff was riding at the time he was injured.

"(3) The trial court erred in overruling defendant's motion to instruct the jury to return a verdict for defendant, because plaintiff testified he knew of the location of the track scale box, and the location of track No. 2 with reference to said track scale box, on which track No. 2 he was riding at the time he was hurt, and because the undisputed evidence shows that the track scale box and the danger of same was open and obvious to the view of plaintiff, and that neither the track scale box nor the dangers thereof were hidden or latent, and plaintiff was presumed to know the danger and assume the risks thereof.

"(4) The trial court erred in overruling defendant's motion to instruct the jury to return a verdict for defendant for the reason that the entire and uncontroverted testimony established the fact that plaintiff knew of the location of the track scale box, and location of said track No. 2 with reference to said track scale box, on which track he was riding at the time he was hurt; and that the track scale box and the dangers of the same were open and obvious to the view of plaintiff, and not hidden or latent, and plaintiff was presumed to know the dangers and assumed the risks.

"(5) Because the trial court erred in the following portion of its charge to the jury: 'The defendant claims that the plaintiff knew of the existence and location of the scale box with which he came in contact, and that by continuing in the work with such knowledge he assumed all risks incident to and arising out of his employment. Upon this point you are instructed that if you believe from the testimony that prior to the plaintiff's injuries he knew of the existence and location of the scale box, and of the danger incident to the discharge of his duties while passing the same on a moving train, if danger there was; or if, knowing of the location of the structure, the danger to the employés while in the usual discharge of their duties was apparent—that is, open to observation—then you are instructed that the plaintiff, by continuing in the employment of the defendant without complaint, assumed such risks, and he would not, therefore, be entitled to recover. In this connection you are further instructed that the mere fact that the plaintiff knew of the existence and location of the scale box would not, as a matter of law, charge him with knowledge of the danger, if such there was, due to its proximity to the north rail of track No. 2; and whether he knew of the danger is a question of fact for you to determine from a consideration of all the facts and circumstances in evidence.' Because the proof showed that plaintiff knew of the location of the track scale box and of track No. 2, on which he was riding at the time he was hurt, in reference to said scale box, and that the same and the location thereof was open and obvious to plaintiff's view, and, being an experienced brakeman, he was charged with notice that riding on the cars as he did was dangerous, and he assumed the risks thereof, and the court should have so charged the jury."

Peyton F. Edwards, Peyton Jas. Edwards, and T. J. Frieman, for plaintiff in error.

R. V. Bowden, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge (after stating the facts as above). The first error assigned is not well taken. The bill of exceptions to which it refers says that at a certain stage of the trial the defendant produced and showed to the plaintiff his written application for employment as a brakeman, signed by him, and dated February 22, 1900. The plaintiff testified that he had read the same at the time he made it, and had written the answers thereto himself to the questions therein asked him, and had signed it. The defendant then offered in evidence the following portions thereof for the purpose of showing that plaintiff had notice of the location of the track scale

box, and that he was in danger of being knocked off of a car when passing the same:

"Q. Do you make this application for employment in train service realizing the hazardous nature of such employment, understanding that it is necessary in operating this railway for the company to have overhead and truss bridges at certain points on the line; also coal chutes, track scale boxes, water tanks, coalhouses, platforms, sheds, roofs, and other overhead and side structures, and that in the performance of the duties for which you are employed you are liable to receive injuries by being knocked off the side or top of cars unless you use due care to avoid injury thereby? A. Yes. Q. Do you agree to acquaint yourself with the location of all overhead and truss bridges, as well as the location of all other structures along the line of the road? A. Yes. Q. Do you understand that no officer or employé of this company is authorized to request or require you to use defective tracks, cars, machinery, or appliances of any kind, and that when you do so you assume all the risk of injury therefrom? A. Yes. Q. Do you understand that this company desires to employ only experienced men in the service, and does not undertake to educate inexperienced men? A. Yes."

Counsel for plaintiff objected to this testimony for the reason that it was irrelevant and immaterial, and that plaintiff had made this application and entered the employ of the defendant, and afterwards resigned, and again entered the employ of the defendant some two years later without making another application; and also because it was offered on the part of the defendant to limit its liability for its own negligence, and void as against public policy; and because the particular location of this track scale is not given. In our opinion, it was not error to sustain the objection made to the proof. Gulf, Colorado & Santa Fé Railway Co. v. Darby (Tex. Civ. App.) 67 S. W. 446.

Errors second, third, and fourth will be considered together. In reference to these we remark, in the first place, that the second states that the undisputed evidence established that the track scale box was erected at a reasonably safe distance and location from track No. 2; and the third states that the undisputed evidence shows that the track scale box and the danger of same was open and obvious to the view of plaintiff, and that neither the track scale box nor the dangers thereof were hidden or latent; and the fourth states that the entire and uncontroverted testimony established the fact that the scale box and the dangers of the same were open and obvious to the view of plaintiff, and not hidden or latent. The bill of exceptions purports to contain a statement of all the facts in evidence. It opens with about a page of what are put down as "facts about which there is no dispute." But this page of the statement of "facts about which there is no dispute" does not support the suggestions of the plaintiff in error as to what is established by the undisputed evidence and the uncontroverted testimony, as above noticed. And, more than that, all of the testimony given by the plaintiff in his own behalf and on his behalf by witnesses called by him, and much of the testimony drawn from witnesses called by the defendant, tends to question the existence of the facts which these assignments of error assume to have been established by undisputed evidence and uncontroverted testimony. Assuming, however, that it was the intention of the plaintiff in error to suggest and urge that the pre-

ponderance of testimony supported their view, said in the assignment to have been established by undisputed evidence and uncontroverted testimony, and that it resulted therefrom that the plaintiff was presumed to know the danger and to have assumed the risks thereof, this would present a case not to have been withdrawn from the jury, but to have been submitted to it under the proper instruction that if they, from a consideration of all the proof, found the fact to be as the defendant contended, either that the scale was placed at a reasonably safe distance and location from track No. 2, or, if it was not, that the danger of the same was open and obvious to the view of the plaintiff, and that neither the track scale box nor the dangers thereof were hidden or latent, and were such, if they existed at all, that a reasonably prudent person engaged as plaintiff was, and in the conditions with which he had been and was then surrounded, would be presumed to know the danger, in such case the plaintiff must be held to have assumed the risk, and could not recover. To this effect, substantially, the jury were directly and clearly instructed.

To support its second assignment of error, defendant's counsel submit that, where a railroad constructs its side tracks and track scale boxes and structures in its own private yards, where the safety of passengers and the public is not involved, and according to the requirements of the situation, and in the manner most convenient to facilitate the transaction of its business, and the same are open and obvious to the sight, and are not hidden or latent, an experienced man who goes to work there is presumed to know the danger thereof, and assumes that risk. To sustain this proposition they cite Tuttle v. Railway, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Nicholas Content v. New York, New Haven & Hartford Railroad Company, 165 Mass. 267, 43 N. E. 94; Terre Haute & Indianapolis Railroad Company v. Becker, Administratrix, 146 Ind. 202–219, 45 N. E. 96; Louisville, New Albany & Chicago Railway Company v. Bates, Administrator, 146 Ind. 564, 574, 45 N. E. 108; Oglesby v. Missouri Pacific Railway Co., 150 Mo. 137–233, 37 S. W. 829, 51 S. W. 758.

We notice these cases in the reverse order of that in which they are cited. The Oglesby Case is a decision rendered by the Missouri Supreme Court in banc, consisting of the seven judges. On the last page of the report we find this:

"Per Curiam. The foregoing opinions expressing the views of the different members of the court are ordered filed. Gantt, C. J., and Brace, J., concur with Valiant, J., for the affirmance of the judgment. Burgess and Marshall, JJ., hold the judgment should be reversed, and the cause remanded for a new trial. Sherwood and Robinson, JJ., hold the judgment should be reversed without remanding, but, in order to dispose of the case, concur with Burgess and Marshall, JJ., in ordering the judgment reversed and the cause remanded. Gantt, C. J., Brace and Valiant, JJ., dissenting."

It will be observed that a bare majority of the court were in favor of reversing the judgment of the trial court, and this bare majority was equally divided on the question as to whether the case should be remanded for a new trial, or should be reversed without remanding. In this connection we note that the report shows that section

3776 of the Revised Statutes of Missouri of 1879 provides that the Supreme Court on appeals or writs of error shall examine the record, and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable. The case was one to recover damages for personal injuries alleged to have been received through the negligence of the defendant in putting into the train on which the plaintiff was hurt a defective car. After the proof both by the plaintiff and the defendant was all in, the defendant moved for a verdict, which was denied. The case was submitted to the jury, and the plaintiff recovered. The leading opinion in the case, submitted by Judge Valiant, and concurred in fully by the Chief Justice and Judge Brace, is, after the statement of the case, divided into five paragraphs or sections. The first relates to the state of the pleadings of the plaintiff, and concludes with the statement that there was nothing in the pleadings or evidence that would have justified the court in taking the case from the jury on the fellow-servant doctrine. The second is addressed to the contention that there was no evidence tending to show that the defendant was liable on the theory that the wreck was caused by the alleged defective car, and it concludes that there was substantial testimony to sustain every fact necessary to be proven by the plaintiff under the instructions given; that there was nothing to indicate any fault on his part; therefore there was no foundation for the demurrer to the evidence. The third considers the contention that the jury awarded excessive damages, and it concludes with the statement that there is nothing in the record to indicate that the sum awarded was anything else than the result of the jury's honest judgment, and that there is no reason why the court should disturb their verdict. The fourth relates to the refusal of certain instructions requested by the defendant, touching which it is said, "These were in the nature of demurrers to the evidence, and are disposed of by the discussion on that subject." In this paragraph the opinion adds: "But some of the instructions given for the defendant should not be passed without notice. Although this is its appeal, and therefore there is no exception to the ruling of the court in giving defendant's instructions, yet, as those instructions will be published in this record, and as they contain erroneous views of the law, they are liable to be considered as having passed with the approval of this court, and might be followed as precedents." The first, third, and fourth of the requested charges given by the court for the defendant were then quoted and criticised. The fifth paragraph contains only one line, in these words: "The fifth instruction contains the same error." The opinion concludes: "There is no error in this record of which the defendant has a right to complain. The judgment of the circuit court ought to be affirmed." Gantt, C. J., and Brace, J., concur. Burgess, J., concurs in paragraphs 1, 2, and 3. The opinion of Marshall, J., was very brief. He says: "I am of opinion that there is no evidence that the car was not properly inspected, and want of proper inspection was the only act of negligence upon which the plaintiff could predicate a recovery under the facts as disclosed by this record.

*  *  *  In the absence of such showing, I think that the negligence as to inspection was not sufficiently shown, and therefore the judgment should be reversed, and the cause remanded." The separate opinion of Sherwood, J., in which Robinson, J., concurred, covers 65 pages of the report, and has the tone throughout of a dissenting opinion. In it he quotes at length from the opinion of Chief Justice Monks in the case of Railroad v. Bates, supra, in which quotation this occurs: "They [the jury] cannot be allowed to set up a standard which shall, in effect, dictate the custom or control the business of a community;" citing in support thereof two Pennsylvania cases and Tuttle v. Railroad, supra.

It is difficult to extract from the report of this decision the persuasive authority applicable to the case we are reviewing on this writ of error. The case of Railway Company v. Bates, supra, is thus stated by Chief Justice Monks in the opinion of the court:

"Appellee's intestate, while in appellant's service, was killed when in the act of coupling cars upon appellant's road, and this action was brought to recover damages therefor, upon the ground that his death was caused by appellant's negligence. Appellant's demurrer for want of facts to sustain the amended complaint was overruled. After issue was joined, the cause was tried by the jury, and a special verdict returned. Appellant moved the court to render judgment in its favor on said verdict, which motion the court overruled, and rendered judgment in favor of the appellee. These rulings of the court are severally assigned as error."

After an elaborate discussion of the different contentions, the opinion concludes:

"It follows that the court erred in rendering judgment in favor of appellee. It is claimed by appellant that the case made by the verdict does not correspond with the allegations or theory of the complaint. As the case must be reversed for other reasons, and the complaint may be amended before another trial, it is not necessary for us to determine this question. We think justice requires that, instead of directing a judgment upon the verdict, a new trial be awarded. Judgment reversed, with instructions to award a new trial, with leave to amend the complaint, and for further proceedings not inconsistent with this opinion."

In the case of Railroad Company v. Becker, supra, there was a special verdict. The whole case being considered on the appeal, the Supreme Court found that "under the circumstances in this case the peril which the deceased was subjected to by reason of such irregular trains was a risk incident to the service which he had entered, and one which he assumed under his contract of employment." It is announced further:

"We do not consider that the fifth finding of the jury, relative to the curves in appellant's road between Waveland and Dooley, and its surroundings, under the circumstances, can serve to exert any influence over the question of appellant's negligence."

After quoting from Tuttle v. Railroad Company, supra, the opinion proceeds:

"The thirteenth and fourteenth findings may properly be considered as being of the character of legal conclusions, and hence can serve no purpose in a special verdict, and must, therefore, be disregarded. Elliott, General Practice, vol. 2, § 931, and authorities there cited. The fifteenth finding is not within the issue of the third paragraph of the complaint. No reasons are urged in support of the cross-errors assigned by appellee; hence they must

be deemed as waived. The court erred in awarding judgment on the special verdict in favor of appellee, for which error the judgment is reversed, and the cause is remanded, with instructions to the lower court to render its judgment upon the special verdict in favor of appellant."

In Content v. Railroad, supra, the opinion states:

"There was no conflict in the evidence as to the material points. The position of the tracks was open and visible. The use and the size of the Star Union cars were known to the plaintiff. The side tracks were used as storage tracks, and were generally filled with cars. At the place where the plaintiff was hurt the side track was parallel with the track upon which he was riding, and had not begun to curve in towards the other track. * * * The defendant did not owe it as a duty to the plaintiff to change the position of its tracks, or to discontinue the use of Star Union cars upon its railroad, or to make a change in its custom of storing these and other cars upon the side track. Therefore, in the legal sense, the defendant was guilty of no breach of duty and of no negligence towards him. If the plaintiff entered into the employment of the defendant, he must be held to have assumed the risk arising from these things."

In Tuttle v. Railroad, supra, the pleadings on which plaintiff relied alleged that the siding called the "boot-jack siding" was negligently and unskillfully constructed by the defendant, with so sharp a curve that the drawheads of the cars in use by defendant would pass each other, and cause the cars to crush any one who attempted to make a coupling thereon. This alleged faulty construction of the track was the principal matter of contest on the trial. Plaintiff contended that the defendant was bound in duty to its workmen and employés to construct a track that would not expose them to the danger which existed in this case, whilst the defendant contended, and offered evidence to prove, that the track was constructed according to the requirements of the situation, a sharp curve being necessary at this place in order to place the cars, when loading, alongside of the dock or slip; that such curves were not uncommon in station yards; that in such condition the drawheads of cars quite often pass each other when the cars come together; that this must be presumed to have been well known to Tuttle, the deceased, who was an experienced yardman; that he accepted the employment with the full knowledge of its risks, and must be held to have assumed them; that it was negligence on his part to place himself in such a situation as to incur the danger and suffer the injury complained of. It appeared by the evidence that when trying to make the coupling the deceased stood on the inside of the curve, where the corners of the cars come in contact when the drawheads pass each other, and will crush a person caught between them; whereas on the outside of the curve they are widely separated, and there is no danger. The defendant contended that the position thus taken by Tuttle was contributory negligence on his part. On the other hand, the plaintiff offered evidence tending to show that it was usual for the brakeman, in coupling cars on a curve, to stand on the inside, so as to see the engineer, and exchange signals with him for stopping, backing, or going forward. The defendant contended, and offered evidence tending to show, that this was not necessary, as there was always a yardmaster or others standing by to co-operate, by whom the signals could be given. Upon the evidence adduced the trial judge di-

rected the jury to find a verdict for the defendant, holding that Tuttle wantonly assumed the risk of remaining on the inside of the drawbar, when he should have gone on the other side, and that the defendant ought not to be held in this action. It was on this state of case that the language was used in the opinion of the court, on which the plaintiff in error, in the case before us, so strongly relies, and which its counsel largely quotes. A part of this language we quote:

"We have carefully read the evidence presented by the bill of exceptions, and, although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires courts to lay down any rule of law to restrict a railroad company as to the curve it shall use in its freight depots and yards, where the safety of passengers and the public is not involved; much less that it should be left to the varied and uncertain opinions of juries to determine such an engineering question."

Then, after some further discussion of principles and precedents and the particular facts of the case in hand, the opinion proceeds:

"Without attempting, therefore, to give a summary of the evidence, we have no hesitation in saying that the judge was right in holding that the deceased, by voluntarily assuming the risk of remaining on the inside of the draw-bar, brought the injury upon himself, and the judge was right, therefore, in directing a verdict for the defendant."

The Union Pacific Railway Company v. O'Brien, 49 Fed. 538, 1 C. C. A. 354, 4 U. S. App. 221, was an action of Nora O'Brien against the railway company to recover damages for the death of her husband, alleged to have been caused by the defendant's negligence. The case was sent to the jury upon the issue of negligence on the part of the company in not properly constructing the track, in that no outlet was provided for the water which would be liable to come down upon the track and deposit thereon sand and other obstructions, and of contributory negligence on the part of the deceased, and upon both issues the jury found in favor of the plaintiff and assessed her damages. Judgment was rendered on the verdict, and the company brought the case to the Circuit Court of Appeals of the Eighth Circuit. On the hearing in that court, Judge Oliver P. Shiras sat as one of the members thereof, and delivered the opinion of the court. In referring to the case of Tuttle v. Railway, supra, which was cited by the plaintiff in error in argument, he said, in substance: The principle of this decision cannot be carried to the extent claimed in argument by counsel for plaintiff in error. If it was applicable in the broad sense claimed for it, the result would be that the well-established rule that it is the duty of the company to use due care and skill in the construction and maintenance of the roadbed and track and in furnishing proper machinery for the use of its employés would be wholly abrogated. In one sense it is a question of engineering skill to determine how a roadbed and track shall be constructed, and, if the conclusion of the engineer in charge thereof is final, and cannot be challenged before a court and jury by one who has suffered injury by reason of defects in the roadbed and track, then it is useless to say that the railway company is bound to exercise due care in the construction of its roadbed, for it could always be prepared to prove that the road was built in accordance with the

instruction of its engineer. The difference between the kind of knowledge called into action in determining the sharpness of a curve that is needed in running a railway line at a given point and that exercised in determining whether the exigencies of a given situation require that some escape or outlet be furnished for water liable to come down a natural waterway intersecting the line of railway is so great that it renders the rule applicable to the one case inapplicable to the other. The training and knowledge of an engineer is not needed to enable one to understand the action of water in rushing down a gully or similar waterway, nor to know, if an obstruction like a solid railway roadbed is built across a waterway, down which any considerable amount of water may be expected to pass, that, unless an outlet is given to it, it must of necessity collect against the roadbed, and perchance overflow it. Such facts are matters of common knowledge gathered from the experience and observation of everyday life, and hence a jury is entirely competent to pass upon an issue involving considerations of that nature. This case was taken to the Supreme Court, and in the opinion of that court, delivered by the chief justice, this language occurs:

"In our opinion, the Circuit Court of Appeals committed no error in its rulings and in affirming the judgment of the court below, and we are not inclined to restate the reasons for the conclusions reached by that court, which are fully set forth in the case as reported." 161 U. S. 457, 16 Sup. Ct. 618, 40 L. Ed. 766.

In the case of Wood v. Louisville & Nashville Railroad Company (C. C.) 88 Fed., on page 46, we find views expressed by Judge Hammond which we think are sound, and applicable to the case before us. He says:

"It cannot be required of a brakeman that he shall go about upon the line of a railroad upon which he is operating, and lay a foot rule to all the structures of this kind, and see whether or not they be so close as to make it necessary that he should be watchful when he is climbing the ladders, or to avoid taking the ladder until the chute shall have been passed. The fact that no accident of this kind had happened before upon the railroad, and that trains were constantly passing this chute without the development of this danger, brings it directly within the class of what we may call 'concealed dangers.' This danger was lurking for years without its being known. The constituent element of it was a matter of mere inches, and that, in the very nature of things, could not be detected by ordinary observation. It is an idle struggle to escape the liability for this negligence to impute contributory negligence of the plaintiff under the circumstances of this case. Even if he had been aware of the fact that the cattle chute was there, it does not follow that he was aware of the fact that it was a few inches, more or less, too close to the track, and he had a right to rely upon and believe that the railroad company would not put it too close to the track, or would not permit the constructor whom they allowed to build it to put it too close to the track, to injure their employés. It is a danger that does not probably show itself until an accident like this brings it into prominence, either to the railroad owner who operates the road or to the man who originally constructed it. They were thinking of establishing a clearance for the cars, and not for a man climbing the ladders at the moment of passing the chute. That danger was probably not thought of by anybody; not by the constructors any more than by the plaintiff. It is a danger that might arise, and possibly did arise in this case, because the car on which he was mounted was wider than ordinary cars, or perhaps the ladder might have been constructed so as to have been further away from the side of the car than in

the ordinary construction of ladders. Many differences of this kind might appear to make a danger in this particular conjunction of a brakeman on a ladder and a cattle chute too near the track that would not be observable to any ordinary intelligence or observation. The case was fairly left to the jury, and they have decided these questions of negligence and contributory negligence against the defendant, and, I think, properly so."

From Peirce v. Clavin, 82 Fed. 552, 27 C. C. A. 227, we quote language used by Judge Jenkins in delivering the opinion of the Circuit Court of Appeals for the Seventh Circuit, as follows:

"Is the defendant in error also chargeable with notice of this obvious defect? If he is, he could not recover. The switch, if defective and dangerous, was in such condition when the defendant in error entered into the service of the receiver. He assumed, in entering upon that service, not only such risks and perils as are incident to the performance of his duty, but the risk of such extra hazard and peril of which he has either actual or presumed knowledge; and, where the defect is obvious, knowledge is presumed of the dangers which it suggests and which are apparent. [Citing authorities.] The question should, therefore, have been submitted to the jury, whether the defendant in error knew, or ought reasonably to have known, the danger to him from this alleged defective appliance."

As was said in the opinion of the Supreme Court in the case of Northern Pacific Railroad v. Everett, 14 Sup. Ct. 474, 38 L. Ed. 373, 152 U. S. 107:

"It is not easy on a subject of this kind to lay down unbending rules, and conflicting cases can readily be found; but, without pursuing the subject further, we are satisfied that in the present case there is no conclusive evidence of the want of due care on the part of Everett in not observing the projecting timber while he was in the discharge of his duty, and while his attention was directed to the work in which he was engaged."

In Lindsay v. New York, New Haven & Hartford Railroad Company, 112 Fed. 384, 50 C. C. A. 298, it was well said by Judge Lacombe:

"Citations of opinions in other cases are not especially helpful, since the decision of each case necessarily depends on its own facts, and these are rarely the same in any two cases."

On the facts of that case which he was considering he assumed that the place where the plaintiff was set to work was not reasonably safe, and that he acted on the night in question with reasonable prudence under the circumstances, and said:

"If the plaintiff's sole opportunity of observation had been in the obscurity of night, he might have worked there a long time without observing them [sluiceways and drains that ran under and across the tracks]; but when it appears that during the months of April, May, and June, and the first week in July, he was moving back and forth over these open and projecting drains every day from daybreak until 7 a. m., he must be held chargeable with knowledge of their existence, and of whatever risk to one using the pathway their appearance would indicate even to the casual observer."

Earlier in the opinion it had been said:

"Where there is reasonable ground for difference of opinion as to whether the defect was plainly observable by him, the jury should decide; but, when it is plainly thus observable, the court will dispose of the case by direction of a verdict."

It would seem that the trial court had directed the verdict, and the judgment of that court was affirmed.

In the opinion of the court in Missouri Pacific Railway Company v. Lehmberg, 75 Tex., on page 67, 12 S. W. 838, we find this language used by Judge Henry, which commends itself to our concurrence:

"Without now considering the question whether the rule in this respect charges an employé with knowledge of defects, except with regard to such appliances or instruments as he is engaged himself in using, we think it sufficient to say that the law does not, under any circumstances, exact of him the use of diligence in ascertaining such defects, but charges him with knowledge of such only as are open to his observation. Beyond that he has the right to presume, without inquiry or investigation, that his employer has discharged his duty of furnishing him with safe and proper instruments and appliances. The evidence discloses that the deceased could see that the engine had a square tank, but it fails to show that he was aware of the different degrees of danger between the use of that and one with a sloping tank, or that he understood the nature of the danger to himself from the use of the square tank."

It has come to be familiar law that a servant is held to assume the ordinary risks of the business upon which he enters, so far as those risks, at the time of his entering upon the business, are known to him, or should be readily discernible by persons of his age and capacity in the exercise of ordinary care. And whether the business is dangerous or not, notwithstanding the general rule that the master is bound to use due care to furnish safe and sound material, machinery, appliances, etc., yet the servant assumes the risk of obvious defects in the things which he voluntarily uses. If his work consists in whole or in part in dealing with dangerous, unsafe, or unsound things, known to him to be so, or obviously so, and which, by the very nature of the business, must be used while in that condition, he assumes the risk of doing so

In the preface to the fifth edition of Shearman & Redfield on Negligence, it is said to be "particularly noteworthy that, even after allowing for some recent reactionary decisions, the general tendency of the federal courts has been toward a liberal interpretation of the law of negligence in favor of the public, and especially of servants." It appears to be settled in Texas that railroad corporations, or other persons owning or controlling railroads and operating trains thereon, are responsible in damages to one of their servants for injuries sustained, without fault or negligence on his part, from the negligent construction or erection by them of an appendage of the road, which subjects such servant to unnecessary hazard and danger, which he could not reasonably have anticipated, and of which there is proof that he was not informed. Also, that a railroad employé owes no duty of inspection to discover obstructions dangerously near the track, which are due to the company's negligence, and does not necessarily assume them by his contract of service, though they are permanent in character, and exist at the time he enters the service. H. & T. C. Ry. Co. v. Henry Oram, 49 Tex. 341; Missouri Pacific Ry. Co. v. Pauline Lehmberg, 75 Tex. 61, 12 S. W. 838; Bonner & Eddy, Receivers, v. J. C. La None, 80 Tex. 117, 15 S. W. 803; Gulf, Colorado & Santa Fé Ry. Co. v. Darby (Tex. Civ. App.) 67 S. W. 446; Galveston, Houston & San Antonio Ry. Co. v. Morston (Tex. Civ. App. 4th Dist. Jan. 7, 1903) 6 Tex. Ct. Rep. 537, 71 S. W. 770.

The passage by the Congress of the United States of the act to promote the safety of employés and travelers upon railroads, etc., approved March 2, 1893, and amended April 1, 1896, and again amended and extended March 2, 1903, and the action of those states, including Texas, where this action arose, in abolishing by statute so much of the fellow-servant doctrine as applied to railroad employés, and declaring void any contract between such employés and their employers as seeks to impose upon such employés the assumption of the risk from the negligence of their fellow servants; and the judicial recognition, in Texas, at least, that it is against public policy that railroad employés should be permitted by contract, express or implied, to assume the risks of dangers not inherent in the business, but arising from the negligence of the employer—clearly indicate the propriety and necessity of modifying the terms and limiting the application of the rules theretofore announced by courts of the highest authority with reference to the doctrine of assumed risks.

From a somewhat extended and careful re-examination of recognized precedents and of the more recent editions of the works of standard text-writers bearing upon the questions involved in the alleged errors which we are considering, we are satisfied that these assignments are not well taken. And what we have said on these does, in our opinion, also dispose of the fifth assignment of error.

The judgment of the Circuit Court is therefore affirmed.