### HAWLEY v. CHICAGO, B. & Q. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1904.)

No. 1,047.

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.

Defendant railroad company had two switchyards in a city, and plaintiff's intestate had been employed for six months as a switchman in the east yards, having been sent during such time to work in the west yards on perhaps 20 to 25 days. In the west yards there were a number of tracks, and the corner of the roof of a freighthouse extended to the center of one of such tracks at a height of 3 feet 8 inches above the top of an ordinary freight car and of 1 foot 8 inches above the top of a furniture car. A furniture car was kicked upon such track through a switch 74 feet distant from the roof corner, and decedent, who had climbed on top of it to set the brake, was struck by the projecting roof and killed. Until 4 days previously he had not worked in such yards for 30 days. It did not appear how many times he had set the brakes on cars on such track, or that he had ever ridden a car past the roof projection, nor was

---

¶ 1. Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.

it shown that he had actual knowledge of the danger therefrom.  *Held*, that he could not be charged, as matter of law, with having assumed the risk.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where a switchman was knocked from the top of a car and killed by the corner of the roof of a freighthouse which projected over a switch track, and the evidence was conflicting as to his actions after mounting the car and his position when struck, the question of his contributory negligence was one for the jury.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Samuel Alschuler, for plaintiff in error.

Albert J. Hopkins, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge.    Action by administrator to recover damages for the alleged wrongful killing of his intestate.    At the conclusion of the evidence the court directed the jury to return a verdict for defendant.    On that verdict the judgment was rendered, to reverse which this writ of error is prosecuted.

In Aurora, Ill., defendant had switchyards east and west of the river. On the west side the yard contained several tracks.    One of these, known as the "house track," ran north and south.    Next east of this was a freighthouse.    Defendant had built and maintained the house at an angle of 30 degrees to the track, and in such a manner that the northwest corner of the roof projected to the middle of the track at a height of 15 feet 8 inches above the rails.    Ordinary freight cars are 12 feet high and furniture cars 14.    By showing this situation, and proving that decedent was killed by being struck by the projection while in the discharge of his duties as freight brakeman on a furniture car, plaintiff made a prima facie case.    Railroad Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Hough v. R. Co., 100 U. S. 213, 25 L. Ed. 612.

Thereupon defendant took the burden of establishing affirmatively and (to warrant a directed verdict) conclusively assumption of risk or contributory negligence.

Assumption of risk.    The Supreme Court said in Hough v. R. Co., supra:

"It is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation. * * *   But it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business.   It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business.   Nor is it one which the servant, in legal contemplation, is presumed to risk."

For the six months preceding the fatal injury decedent had been working for defendant as a yard brakeman.    His usual place of employment was in the east yard.    During those six months he had been sent on different days, estimated at 20 to 25, to take the place of some

absentee in the switching crew in the west yard.   On four successive days, including the day of the accident, he had been in the west yard. Before that he was not shown to have been there for 30 days.   Cars were kicked in on the house track once or twice a day.   Sometimes a brakeman rode the car in and set the brake to hold it; sometimes the brakeman ran along by the car and blocked the wheels with a stone or piece of wood.   On the occasions when decedent was present in the west yard, sometimes he, sometimes the other brakeman, and sometimes the foreman, attended to the car that was kicked in on the house track. Decedent had ridden ordinary cars on the house track, but not furniture cars.   The distance from the switch through which the cars were kicked in on the house track to the projecting corner of the roof was 74 feet, or about 2 car lengths.   The track was upgrade from the switch to the freighthouse and beyond, so that the kicked car had to be held by brake or block at the desired place, or it would coast back to the switch.

From the above-quoted declaration of the Supreme Court in Hough v. R. Co. it is very clear that decedent, on entering the service, did not assume the danger from the roof corner that projected over the track as needlessly as a pike or bayonet.   When, if ever, did he assume it?

The record contains no evidence that any one had informed him of the danger, no statement or admission that he knew of it, nothing that conclusively forces the inference that he was aware of the peril that cost him his life.

Did the evidence wall in the jury with one inevitable conclusion, so that it was right for the court to tell them that the law charged decedent with knowledge of the danger and the assumption thereof? We think not.   We are not now saying that it would be impossible for 12 reasonable men, under proper instructions from the court, to find as a fact that a prudent person, circumstanced as was decedent, would have known of the danger before undertaking the act, and would either have kept out or have gone ahead knowingly at his own risk.   But, if any other finding was permissible under proper instructions, the case should have been submitted to the jury.

Decedent's regular work was not in the west yard.   The things with which he regularly charged his mind in connection with his employment were in another locality.   Prior to the four days ending with his death, he had not been in the west yard for a month.   The house track was only one of several in the west yard.   Once or twice a day a car or cars were kicked in on the house track.   Seemingly the bulk of the work was on other tracks.   Counting all the odd occasions (all but the last being a month before his injury), decedent had been in the west yard 20 to 25 times.   The foreman and the other switchmen also attended to cars that were set in on the house track.   How often did decedent?   The evidence is indefinite as stated.   One-third?   That would be seven or eight times all told.   Sometimes the brake was used; sometimes a block.   How many times did decedent use the brake? The evidence does not distinguish.   Half?   Then three or four times. The distance from the switch to the roof projection was about two car

lengths, and the track was upgrade. When the car was kicked hard enough to send it up the grade to the desired point beyond the roof projection, at what point along the track, on the three or four occasions decedent used the brake, did he begin mounting the car? The evidence fails to show. Even if he started to catch the stirrup and climb the ladder at the switch, the car may have traveled twice its length before he reached the top to pass to the brake wheel, and his attention, engrossed in the proper performance of his duties, may never have been called to the danger of being knocked from the top of a high car by the uselessly projecting corner of the roof. When he was at work on other tracks, giving and receiving signals, opening and closing switches, running to catch and stop, couple and uncouple, moving cars, were his opportunities such that a prudent person diligently engaged in the master's service should have learned of the danger? The freighthouse was there as a visible object, but from other tracks the perspective may not have informed him that the roof corner projected to the center of the house track. When he glanced from his work on other tracks towards the freighthouse, if he did, he may not have appreciated, unless a box car were passing under the roof corner at that instant, the relative heights of the two. The knowledge, actual or constructive, that must have been brought home to decedent, was not knowledge that the freighthouse roof had corners, but knowledge of the danger from the possible relations between a roof corner that projected to the middle of the house track at a certain height, a car of a certain height moving at a certain speed under the roof corner, and a person on the top of the car in such a position as to be hit by the roof corner. A surveyor can now bring together the measurements that prove the danger was present. But decedent was not there as a surveyor. Actual knowledge was not proven. On this record we think defendant failed to discharge the burden of establishing conclusively a state of facts on which the law will charge decedent with having assumed the risk. Compare Railroad Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Railroad Co. v. Swearingen, 122 Fed. 196, 59 C. C. A. 31; Swift v. O'Neill, 187 Ill. 337, 58 N. E. 416.

Plaintiff further contends (citing Dorsey v. Construction Co., 42 Wis. 583, and Shearman & Redfield on Negligence [4th Ed.] § 198) that the projecting roof corner in its relations to track and cars constituted such a deathtrap that neither constructive nor actual knowledge of the danger at some time before the injury would establish assumption of risk, that in law a servant is not bound to keep his memory constantly charged with the location and relations of such obstacles, and that his engrossment in his duties at the time of the injury might excuse his failure to recall the impending peril; but we deem it unnecessary to formulate any opinion thereon at this time.

Contributory negligence. On the occasion of his injury decedent, according to one witness, climbed to the top of the car, ran directly towards the roof corner, dodged in front of it, stooped as if to avoid it, and was struck; according to others, he mounted the ladder before the car reached the roof point, ran to the brake with his back towards the projection, stooped to seize the brake wheel, and was struck. The

quality of decedent's conduct at the time (and this might take some color from the inferences as to his constructive knowledge) being in dispute, the question of contributory negligence should have been submitted to the jury.

Judgment reversed; new trial ordered.